**PACIFIC INDEMNITY COMPANY**

v.

Robert LINN, D.O., Stephen D. Moses, D.O., Robert Linn Medical Associates, David H. Smith, Individually and as Administrator of the Estate of Patricia Smith, Deceased, Jack Silberlicht, Executor of the Estate of Judith Silberlicht, Deceased, Aetna Insurance Company, William K. Myrletus, Director, Pennsylvania Professional Liability Catastrophe Loss Fund, Chicago Insurance Company, and Interstate Fire & Casualty Company

v.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Pennsylvania Professional Liability Joint Underwriting Association.

Civ. A. No. 79–699.

United States District Court, E.D. Pennsylvania.

June 25, 1984.

Henry H. Janssen, Rawle & Henderson, Philadelphia, Pa., for plaintiff.

Walter W. Rabin, Philadelphia, Pa., for Robert Linn, D.O., Stephen D. Moses, D.O. and Robert Linn Medical Associates.

Jay J. Lambert, Philadelphia, Pa., for Pennsylvania Professional Liability Joint Underwriting Ass'n.

John A. Guernsey, Philadelphia, Pa., for Interstate Fire & Cas. Co.

Kevin Canavah, Philadelphia, Pa., for Nationwide Mut. Fire Ins. Co.

Thomas C. DeLorenzo, Philadelphia, Pa., for Aetna Ins. Co.

David M. Donaldson, Philadelphia, Pa., for Pennsylvania Professional Liability Catastrophe Loss Fund.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

This is a declaratory judgment action by Pacific Indemnity Company ("Pacific") to determine which insurance company, if any, must defend and indemnify claims against Robert Linn, D.O. ("Dr. Linn") which have been or may be asserted on behalf of persons who read Dr. Linn's book, *The Last Chance Diet*, followed the diet program it recommended, and consequently suffered personal injury or death. Liability was asserted for malpractice, professional negligence, breach of warranty and/or products liability arising out of the purchase of Dr. Linn's book and/or a dieting protein product called "Prolinn." As notice of each of these "bookreader" claims was given to the insured, Pacific agreed to defend Dr. Linn under a reservation of rights in cases falling within its policy period. The other insurers refused to defend Dr. Linn against any of the claims. By Memorandum and Order dated July 24,

1981, and by Opinion filed December 1, 1982, the court determined obligations to defend Dr. Linn against these underlying claims and now disposes of remaining indemnity issues and motions for reimbursement filed by the parties.

The matter first came before the court on cross-motions for summary judgment by all insurance companies that were defendants to the amended complaint. Nationwide Mutual Fire Insurance Company ("Nationwide"), a third-party defendant, did not move for summary judgment. The Joint Underwriting Association ("JUA") was then a defendant; it challenged the jurisdiction of the court because JUA is an unincorporated association with some corporate members in the state of citizenship of plaintiff. The court determined that JUA was a legal entity separate from its members and a citizen only of Pennsylvania but then reconsidered. By Memorandum of September 14, 1981, the court dismissed JUA as a party defendant with leave to join JUA as a third-party defendant; JUA was subsequently so joined by agreement of the parties.

In a Memorandum and Order of July 24, 1981 on the motions, the court: denied certification of a nationwide defendant class of claimants who had not yet asserted claims against Dr. Linn; held the issues of insurance coverage were determined by Pennsylvania law; dismissed defendant Chicago Insurance Company ("Chicago") because it did not provide coverage either at the time the alleged torts occurred or at the time the claims were made; and decided issues as to the duty of the insurance companies to defend to the extent there were no material issues of fact. The complaint in each underlying case of record was analyzed in regard to each insurance policy then before the court.

But in deciding the cross-motions for summary judgment, the court limited its decision to the duty to defend and declined to determine each insurer's duty to indemnify Dr. Linn for judgments that might be entered against him. The duty to defend is distinct from the duty to indemnify; an insurance company must defend the action if the factual allegations of the underlying complaint on their face state a claim against the insured to which the policy *potentially* applies. *C.H. Heist Caribe Corp. v. American Home Assurance Company*, 640 F.2d 479, 483 (3d Cir.1981). Because factual findings not yet made in the underlying actions would affect the insurers' obligations to indemnify, this court was of the opinion that decision on the obligation to indemnify was premature and must await further developments.

By agreement of Dr. Linn and all insurance companies other than Nationwide, and in accordance with an order entered by this court on October 2, 1981, Aetna Insurance Company ("Aetna") and Interstate Fire & Casualty Company ("Interstate") each contributed the sum of $20,000 and JUA contributed $5,000 to a fund to be disbursed by counsel for Dr. Linn in payment of costs and counsel fees expended in defense of the lawsuits pending against him.

On December 14, 1981, following trial on December 7–11, 1981 of the issues remaining as to the duty to defend, in consideration of the parties' request for a prompt decision and with the agreement of all parties hereto, the court filed a Memorandum of Decision that stated its opinion of the parties' duty to defend defendants Robert Linn, D.O., Stephen D. Moses, D.O. and Robert Linn Medical Associates. Attorneys' fees, costs and expenses incurred to that date were to be awarded accordingly. Attorneys' fees, costs and expenses in the action for declaratory judgment were not awarded to that date but the court informed the parties that it might award such fees and costs from that time forward.

With the encouragement of the court considerable discussion ensued among the parties as to a *modus vivendi* prior to a final, appealable order. On December 4, 1981, a stipulation of procedure was filed that provided that in the event one or more of the parties was held liable to reimburse reasonable defense and investigation fees, costs and expenses incurred either in the

defense of the underlying claims or the declaratory judgment itself, any dispute on the reasonableness of the amounts would be referred to final, binding Defense Research Institute Arbitration. However, all parties continued to seek final determination not only of the obligation to defend but also of the obligation to indemnify. The court granted leave to the parties to move to amend the complaints, cross-claims and third-party complaints to assert claims only as to the obligation to defend and to delete claims as to indemnification without prejudice to their reassertion in a subsequent action or actions for indemnification, but only defendant Linn so moved and his motion was opposed by others.

In accordance with and pursuant to the court's December 14, 1981 Memorandum, and following a pretrial conference, Aetna undertook to defend and settle the *James, Bass, Lehman, Silberlicht, Cochran, Hudgens, Harmon,* and *Hunton,*[1] cases without prejudice to its right to seek reimbursement and without question, objection or contest regarding the necessity or reasonableness of the sums paid by Aetna in defense or settlement; Aetna did undertake the defense of those cases, reimbursed Pacific for Aetna's proportionate shares of defense costs in the *James* and *Bass* cases, and expended certain sums in settlement of the *Lehman* and *Silberlicht* cases and in defense of the *Lehman, Silberlicht, Cochran, Hudgens, Harmon,* and *Hunton* cases.

Upon due notice to and refusal by Nationwide to advance 50% of those settlement and defense expenditures, Aetna paid and was assigned the claims of Dr. Linn against Nationwide for costs in defense of the lawsuits brought against him. Aetna filed its first motion for reimbursement in November, 1982; it was opposed by Nationwide in part on the ground that there had been no judgment filed by the court.

Thereafter, on December 1, 1982, the court filed Findings of Fact and Conclusions of Law as to the parties' duty to defend only. The court reconsidered whether it should decide the duty to indemnify because subsequent to decision on the summary judgment motions, the Court of Appeals, in *ACandS Casualty and Surety Co. v. The Travelers Indemnity Co.,* 666 F.2d 819 (3d Cir.1981), had reversed a district court's determination of non-justiciability in a declaratory judgment action to determine which of two insurance companies had the obligation to defend and indemnify asbestos lawsuits. It held an actual case or controversy present with respect to that indemnity obligation notwithstanding uncertainty as to the amount of the insured's liability; determining the insurers' respective liabilities would permit settlement of the underlying lawsuits and avoid unnecessary costs and the risk of litigation. *Id.* at 823.

In *ACandS,* the insurance dispute was "real and concrete," because "the factors that will determine the relative duties and benefits under the insurance contracts are independent of the underlying claims." *Id.* at 822–23. But here not only the amount of potential liability but the factual predicate for determining coverage itself was missing; the insurers' obligations to indemnify Dr. Linn were not independent of the underlying claims. The underlying complaints stated claims for personal and professional negligence, strict products liability, breach of warranty, and misrepresentation; if a particular suit were to result in a judgment for that plaintiff against Dr. Linn, the indemnity obligation of his insurers could depend on which theory or theories might prevail at trial. *ACandS* was inapposite because each insurer's contractual duty to indemnify Dr. Linn was dependent on development of factual records in the underlying cases.

As in *Heist, supra,* which was neither referred to nor overruled by the panel in *ACandS,* "[the] obligation to indemnify ... cannot be determined merely on the basis of whether the factual allegations of [each] complaint potentially state a claim against

---

**1.** Aetna also undertook to defend and settle the *Kerr* case. However, at a hearing held on No-vember 30, 1983, the parties all agreed that the *Kerr* case was not involved in this action.

the insured. Actual indemnification depends upon the existence or nonexistence of facts not yet established." *Id.* at 483. Therefore, the court held the obligation of Pacific, Aetna, JUA and Nationwide to indemnify Dr. Linn, Dr. Moses and Linn Associates could not yet be determined. In the view of the court, there was no actual controversy under the Declaratory Judgment Act because the question of indemnification as to the policies in suit was not ripe for decision. But this holding was clearly without prejudice to later determination of the right of indemnification upon final disposition of the underlying claims, whether by settlement or judgment. *Cf., Sandoz, Inc. v. Employer's Liability Assurance Corp.,* 554 F.Supp. 257 (D.N.J. 1983) (plaintiff, having incurred costs in settlement in underlying cases, presented issue as to indemnification sufficiently concrete, immediate and adverse to defendant insurance companies to constitute a justiciable controversy on partial summary judgment; factual disputes as to date of onset and manifestation of injuries precluded allocation of liability among the defendants prior to trial).

Aetna and Pacific moved for reimbursement but Nationwide moved for amendment of the judgment or in the alternative for new trial. Then Nationwide withdrew its motion and appealed the judgment, as did Aetna and Pacific.

On February 22, 1983, the Court of Appeals dismissed the interlocutory appeals for lack of jurisdiction without prejudice to certification by the district court under Fed.R.Civ.P. 54(b); Aetna and Nationwide moved for certification to the appellate court. But while the interlocutory appeals were pending, all the underlying cases except for *Harmon* had been terminated. All underlying actions except for *Harmon* [2] having been determined, the indemnifica-

tion issues had become ripe for decision by this court. Therefore, by Memorandum and Order dated November 9, 1983, this court denied the motions for certification of appeal as not in the interest of sound judicial administration. But the motions for reimbursement were denied until presented in a manner enabling resolution consistent with the court's determination of the legal issues.

The court held argument on all remaining issues, particularly with regard to certain recent cases decided by the Third Circuit subsequent to the court's Opinion filed December 1, 1982.[3]

## I. DUTY TO DEFEND

The court determined the various obligations to defend Dr. Linn against the underlying complaints by Memorandum and Order of July 24, 1981 and an Opinion filed December 1, 1982, incorporated by reference herein. Since then, two cases, *Selected Risks, supra,* and *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 469 A.2d 563 (Pa.1983), have limited the insurer's obligation to explicitly inform a prospective insured of policy exclusions. In *Hionis v. Northern Mutual Insurance Co.,* 230 Pa.Super. 511, 327 A.2d 363 (1974), the Pennsylvania Superior Court had held that "where a policy is written in unambiguous terms, the burden of establishing the applicability of the exclusion or limitation involves proof that the insured was aware of the exclusion or limitation and that the effect thereof was explained to him." 230 Pa.Super. at 517, 327 A.2d at 365. The Third Circuit subsequently held in *Selected Risks* that *Hionis* protected only *reasonable* expectations, so that an exclusion, even if not explained to the insured, is effective against the insured's *unreasonable* expectations. But *Standard Venetian Blind,* a later decision of the Pennsyl-

---

**2.** The *Harmon* case remains pending in an Illinois state court with no likelihood of disposition in the foreseeable future. The court now deems it unnecessary to postpone an appeal in this action until the termination of *Harmon.*

**3.** The relevant decisions were *Selected Risks Ins. Co. v. Bruno,* 718 F.2d 67 (3d Cir.1983); *McDowell-Wellman Engineering Co. v. Hartford Accident and Indemnity Co.,* 711 F.2d 521 (3d Cir. 1983); *Viger v. Commercial Ins. Co. of Newark, N.J.,* 707 F.2d 769 (3d Cir.1983). Only *Selected Risks* is of any import here.

vania Supreme Court, rejected *Hionis* entirely so long as the exclusion clause is clear, unambiguous, and prominently displayed, whether or not the insured had reasonable expectations of coverage; to the extent that *Selected Risks* is inconsistent, it is *Standard Venetian Blind* that now provides the basis for decision:

> *Hionis*, which would permit an insured to avoid the application of a *clear and unambiguous* limitation clause in an insurance contract, is not to be followed.... We hold only that where, as here, the policy limitation relied upon by the insurer to deny coverage is *clearly worded and conspicuously displayed*, the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation or that he did not understand it.

469 A.2d at 567 (emphasis added). However, neither *Selected Risks* nor *Standard Venetian Blind* alters the court's prior rulings as to duty to defend.

■ The relevant exclusion in the JUA professional liability policy states that the policy does not cover liability arising out of "ownership, operation or supervision by the Insured ... of ... any business enterprise." . The court has previously decided that the meaning of "business enterprise," not defined in the policy, and the intent of the parties as to the scope of the exclusion were unclear and were therefore strictly construed against the insurer. (Memorandum and Order of July 24, 1981 at 28). The insured physician could have reasonably expected that a professional liability policy would provide coverage for lawsuits alleging medical malpractice or professional negligence even though they arise from the publication and sale of a book. Because the exclusion is not clear and unambiguous, this court's decision does not deviate from the plain language of the insurance contract in disregard of *Standard Venetian Blind*.

■ Aetna's commercial insurance policy contains a "products hazard" exclusion which denies coverage for "[b]odily injury ... arising out of the named insured's products." [4] The "named insured's product" is defined as "goods or products manufactured, sold, handled or distributed by the named insured, ... including any container thereof." The court has held this exclusion ineffective because the insured was unaware of it, and even if he "[h]ad ... read the 140-page Aetna commercial package policy and been made aware of the products hazard exclusion clause prior to writing the book, [he] would not have understood that manufacture or distribution of a product referred to writing a book.... The ordinary person does not consider that an author 'manufacturers' a book in writing it." (Opinion filed December 1, 1982 at 7, 14).

*Standard Venetian Blind* does not change the inapplicability of this exclusion. While Aetna may in fact have intended the clause to exclude the instant occurrences from coverage, that intent is certainly not clearly worded nor prominently displayed in the 140-page policy. The clause is ambiguous; it cannot be ascertained from its undefined terms whether or not writing a book is manufacturing a product within the meaning of the exclusion. Even if Dr. Linn were fully aware of the products hazards exclusion, he would not necessarily have understood that manufacture or distribution of a product referred to and included writing a book. Neither would most people. It is not unreasonable to expect that a commercial insurance policy will cover liability incurred by writing a book.

■ Finally, Nationwide's "personal negligence" policy excludes liability arising from "any errors or omissions in the rendering of a professional service, ... [and] activities in connection with a business

---

**4.** The exclusion applies "only if the bodily injury ... occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others."

Aetna's policy also contained three other exclusions which on their face are inapplicable to the bookreader claims. *See,* Memorandum and Order dated July 24, 1981, at pp. 29–34.

solely owned by an Insured or owned by a partnership of which an Insured is a partner." The court previously held that even if these exclusionary clauses were not rendered inapplicable by *Hionis*, they did not exclude coverage for the bookreader claims. (*See*, Opinion filed December 1, 1982 at 16–17). The former exclusion applied only to professional acts; Nationwide was not required to defend Dr. Linn against complaints alleging negligent professional rather than personal acts. The latter exclusion applied only to "activities in connection with a business, solely owned by an Insured or owned by a partnership of which the Insured is a partner," and not to income-producing endeavors which are not part of a business operating with assets of the insured. Because *Hionis* had no material effect on Nationwide's exclusions, its subsequent limitation is not relevant to the applicability of its exclusions.

The only other exclusion the applicability of which might be affected by the *Standard Venetian Blind* and *Selected Risks* cases is the "business or business products" exclusion in Interstate's professional and personal liability excess policy. But it is now clear that the excess coverage of the Interstate policy will not be called upon by any of the bookreader cases with the possible (although highly unlikely) exception of *Harmon.* The exclusion would affect Interstate's obligation to indemnify and not its obligation to defend; the court has not yet determined whether the exclusion precludes coverage although *Hionis* would have made the clause inapplicable. There is no need to determine now whether *Standard Venetian Blind* or *Selected Risks* have affected the applicability of the Interstate exclusion. Should the Interstate policy in fact be implicated by *Harmon,* the court will then deal with the exclusionary clause.

## II. DUTY TO INDEMNIFY

■ The underlying bookreader claims, excepting *Harmon*, have all now been terminated by settlement or final judgment in favor of Dr. Linn. The obligation to indemnify in each case (except *Harmon*) is now ripe for decision.[5] Unlike the duty to defend, the duty to indemnify "cannot be determined merely on the basis of whether the factual allegations of [the underlying] complaint potentially state a claim against the insured." *Heist, supra* at 483. Rather, there must be a determination that the insurer's policy actually covers the claimed incident.

■ Here, the various insurers were obligated to defend Dr. Linn because the underlying complaints stated causes of action on which there was potential liability. The court deferred deciding which insurers were obligated to indemnify Dr. Linn until the final disposition of each underlying case presented a factual basis for determining which insurers had indemnity obligations. However, because those cases implicating the duty to indemnify were terminated by settlement rather than final judgment,[6] it is now impossible to determine on what theories of liability, if any, the underlying plaintiffs would have prevailed. There are no factual findings to consider in determining which insurers are obligated to indemnify Dr. Linn. As a result, the duty to indemnify must follow the duty to defend.

■ Where a complaint alleges facts supporting more than one theory of recovery from an insured, including a claim potentially covered by the insured's policy, "it [is] the duty of the [insurer] to undertake the defence, until it [can] confine the claim to a recovery that the policy [does] not cover." *Lee v. Aetna Casualty & Surety*

5. Final determination of the pending *Harmon* case must await its final outcome. If *Harmon* settles or ends in favor of Dr. Linn, the duty to indemnify will be the same as determined in *Silberlicht.* Should the case be decided against Dr. Linn, special interrogatories would help determine which insurer had to indemnify Dr.

Linn. The court will retain jurisdiction and await the disposition of *Harmon* before finally determining the indemnity obligations therein.

6. The *Cochran, Hudgens* and *Hunton* cases were terminated by final judgment in favor of Dr. Linn and do not implicate a duty to indemnify.

Co., 178 F.2d 750, 753 (2d Cir.1949). *See also, Pittsburgh Plate Glass Co. v. Fidelity and Casualty Co. of N.Y.*, 281 F.2d 538 (3d Cir.1960) (insurer obligated to defend must do so until claim is narrowed to one outside policy coverage); *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484 (1959) (same). Thus, the duty to defend in effect carries with it the conditional obligation to indemnify until such time as it becomes clear that there can be no recovery within the insuring clause. *See, Cadwallader, supra.* Since all the relevant underlying cases (except *Harmon*) have been settled and there are no factual findings establishing those claims, if any, on which the bookreader plaintiffs would have prevailed, the insurers cannot confine potential claims to those clearly outside the scope of coverage.[7] Those insurers found obligated to defend Dr. Linn are therefore also responsible for any payments made in settling the bookreader cases. *See, Ripepi v. American Insurance Companies*, 349 F.2d 300 (3d Cir.1969); *Cadwallader, supra.*[8]

Accordingly, the following carriers are initially obligated to indemnify the insured up to the amounts of their respective policy limits:

| | |
|---|---|
| *James:* | Pacific, JUA, Aetna |
| *Smith:* | Pacific, JUA, Aetna, Nationwide |

| | |
|---|---|
| *Lehman:* | Aetna, Nationwide |
| *Silberlicht:* | Aetna, Nationwide |
| *Bass:* | Pacific, JUA, Aetna |

If the *Harmon* case is terminated in favor of Dr. Linn or settles prior to a determination that any claims therein do not fall within the scope of a particular policy, the duty to indemnify will follow that in the *Silberlicht* case (Aetna and Nationwide sharing the primary obligation to indemnify Dr. Linn).[9] The court will retain jurisdiction and determine the duty to indemnify in *Harmon* following final disposition of that case.

This discussion of indemnification applies to the primary insurers. The excess policies are not implicated by the results in the underlying cases to date. It is now unnecessary to determine which excess insurers would have had indemnification obligations. In the unlikely event that *Harmon* results in a settlement or judgment in excess of the primary policy limits, that issue remains for subsequent determination.

## III. APPORTIONMENT AND CONTRIBUTIONS

 Various policies contain "other insurance" clauses limiting the extent of liability where the insured carries another policy or policies applicable to the claimed loss.[10] Under Pennsylvania law, "other or

---

7. The court is not obligated, nor indeed able, to make the evidentiary findings necessary to determine on what claims, if any, the underlying plaintiffs would have recovered had the cases been fully litigated. *See, Ripepi v. American Insurance Companies*, 349 F.2d 300, 303 (3d Cir.1965) ("Appellant wishes us, by the use of hindsight, to speculate what evidence might have been presented in the Common Pleas action and determine whether, on the basis of such evidence, a compulsory nonsuit would have been required. This is well beyond our present competence and the requirements of the law.").

8. An insurer who refuses to defend a claim potentially within the scope of the policy does so at its own peril. *Ripepi, supra* at 302; *Cadwallader, supra* at 152 A.2d 488. Therefore, Nationwide, which has refused to provide any defense for Dr. Linn, may not now protest that it was deprived of an opportunity to litigate and establish that the underlying claims fell outside its policy coverage. Those insurers that did contribute to Dr. Linn's defense are also precluded from arguing that the underlying claims fell outside their policies since they had the opportunity and declined to litigate the claims to conclusion.

9. The *Cochran, Hudgens* and *Hunton* cases all were terminated in favor of Dr. Linn and do not implicate the duty to indemnify. *See*, note 5, *supra.*

10. This discussion of "other insurance" applies not to the duty to defend but only to the duty to indemnify since, in general, an "other insurance" clause is invoked only when the insured has made some payment in discharge of liability. *See, Green v. Benson*, 271 F.Supp. 90, 96 (E.D.Pa.1967). The duty to defend is unaffected by an "other insurance" clause because, unless stated otherwise, that obligation is independent of liability and any limitations thereon. *See, Liberty Mutual Insurance Co. v. Pacific Indemnity Co.*, 557 F.Supp. 986, 988 (W.D.Pa.1983); *Brunner v. McCullough*, 216 F.Supp. 496, 499 (E.D.Pa.1963).

double insurance exists only where there are two or more insurance policies covering the same interest, the same subject matter and against the same risk." *Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Co.*, 385 Pa. 394, 400, 123 A.2d 413, 415 (1956). For example, in *Blue Anchor*, plaintiff had suffered damage due to leakage from a fire sprinkler system. Although plaintiff carried three fire insurance policies, including defendant's, only defendant's policy afforded protection against loss from leakage from fire protective equipment. The court held defendant's "other insurance" clause, which required apportionment of liability in the event of other insurance, inapplicable because the other fire policies did not cover the same risk and therefore did not constitute other insurance. *See also, United National Insurance Co. v. Philadelphia Gas Works*, 221 Pa.Super. 161, 289 A.2d 179 (1972) (certificate of self-insurance covering vehicles owned by and registered in the name of insured not "other insurance" with respect to insured's policy covering rented car).

Here, some but not all the policies would be considered "other insurance." Pacific and JUA provide coverage for professional liability, *i.e.*, liability for professional services rendered or which should have been rendered by the insured in the practice of the insured's profession. Therefore, they are "other insurance" as to each other. However, Aetna's primary policy provided commercial general liability coverage for occurrences resulting in bodily injury or property damage and insured against a risk distinct from the professional liability risk covered under the Pacific and JUA policies. The Nationwide policy, the homeowner's policy protecting Dr. Linn against loss from negligent personal acts, insured against a risk different from that intended to be covered by either the Aetna commercial general liability policy or the professional liability policies of Pacific and JUA. Neither the Aetna policy nor the Nationwide policy would be "other insur-

ance" with respect to each other or to the Pacific and JUA policies.

More than one policy has been deemed applicable to each bookreader case because the underlying complaints alleged several theories of liability that implicate different insurers. But had a bookreader case resulted in monetary judgment against Dr. Linn, only one insurer might have been liable for the judgment. For example, the plaintiff in *Lehman* alleged both strict liability and negligence; therefore, Aetna and Nationwide were obligated to defend Dr. Linn. Had the case not settled, it is possible that the plaintiff would have prevailed on one claim but not the other. In that case, only one of the insurers would have been obligated to indemnify Dr. Linn. Aetna and Nationwide cannot be "other insurance" as to each other because they did not insure against the same risk of liability.

Only JUA and Pacific insure the same interest, the same subject matter and the same risk, and may be deemed "other insurance" as to each other. The Pacific policy provides that if the insured has other insurance covering the occurrence, any loss shall be distributed on a "pro rata" basis, *i.e.*, each insurer shall be liable for that portion of the loss which the applicable limit of the single policy bears to the total applicable limits of all valid and collectible insurance. JUA's policy contains an "excess" other insurance clause which states, "[i]f the Insured carries a policy of another insurer against any loss covered by this policy, the Association shall not be liable for any payment hereunder until all payments under such other insurance are exhausted." JUA's "other insurance" clause also states that "the limits of liability under this policy shall be reduced by the extent of payments made by such other insurer." This additional language could operate as an "escape" clause if the other insurers have policy limits equal to or in excess of JUA's policy limits.[11] Where

---

**11.** An "escape" clause generally provides that the company invoking it is relieved of any obli-

one policy containing an "excess" clause and another policy containing a "pro rata" clause are concurrently effective, the "excess" clause will be given full effect and the "pro rata" clause will be disregarded. *Walters v. Dunlap*, 250 F.Supp. 76 (W.D. Pa.) *aff'd* 368 F.2d 118 (3rd Cir.1966). Therefore, unless and until the Pacific policy limits have been reached, JUA is not obligated to pay.

There is no bookreader case in which only these two insurers have been found liable for defense and indemnity costs. Two cases, *James* and *Bass*, implicate JUA, Pacific and Aetna. One case, *Smith*, implicates those three insurers and also Nationwide. While the JUA "other insurance" clause affects the amount payable under the Pacific policy, the JUA policy is not excess to either Aetna's policy (in *James*, *Bass* and *Smith*) or Nationwide's policy (in *Smith*) because neither of those policies insures against the same risk as the JUA policy. For the same reason, the Pacific "pro rata" clause does not affect amounts payable under the Aetna or Nationwide policies.

■ As a result, in the *James* and *Bass* cases, JUA, Pacific, and Aetna would initially be equally liable for the amount paid in settlement and in the *Smith* case, JUA, Pacific, Aetna and Nationwide would be liable. However, because JUA's "other insurance" clause is effective as to Pacific's policy, Pacific is also liable for JUA's share of settlement costs.[12] Therefore, in *James* and *Bass*, Pacific is obligated to indemnify Dr. Linn for two-thirds of each settlement payment (its own one-third liability and JUA's one-third liability) and Aetna is liable for one-third. In *Smith*, Pacific must indemnify Dr. Linn for one-half of the settlement payment (its own one-quarter liability plus JUA's one-quarter liability); Aetna

and Nationwide are each obligated for one-quarter of the settlement payment. In the remaining cases, *Lehman* and *Silberlicht*, Aetna and Nationwide are each liable for one-half the settlement.

Each insurer has the following policy limits: Aetna—$500,000 each occurrence, $500,000 yearly aggregate; Pacific—$200,000/$600,000; JUA—$100,000/$300,000; Nationwide—$100,000 each occurrence with no aggregate. The *James* case was settled for $1,500, *Smith* for $100,000, *Lehman* for $40,000, *Silberlicht* for $115,000, and *Bass* for $35,000. Therefore, the liability of each insurer is:

| | |
|---|---|
| *James:* | Aetna is liable for $500; Pacific is liable for $1,000; JUA is not liable for any amount because no payment in excess of the Pacific policy was required. |
| *Smith:* | Aetna is liable for $25,000; Pacific is liable for $50,000; Nationwide is liable for $25,000; JUA is not liable for any amount because no payment in excess of the Pacific policy was required. |
| *Lehman:* | Aetna and Nationwide are each liable for $20,000. |
| *Silberlicht:* | Aetna and Nationwide are each liable for $67,500. |
| *Bass:* | Aetna is liable for $11,666.67; Pacific is liable for $23,333.33; JUA is not liable for any amount because no payment in excess of the Pacific policy was required. |

No case disposition to date implicates the excess policies. It is possible that *Harmon* may result in a settlement or judgment which would require payments from one or more of the excess policies, but the plaintiff in *Harmon* would have to recover more than $475,333.33 (the $375,333.33 remaining from Aetna's $500,000/$500,000 policy limit plus the $100,000 per occurrence limit of Nationwide's policy). That figure is more than four times higher than the highest recovery in a bookreader case to date.

gation to the insured if other coverage is available. "Escape" clauses are disfavored in the law and will ordinarily not be given effect. *See, Maryland Casualty Co. v. Horace Mann Insurance Co.*, 551 F.Supp. 907 (W.D.Pa.1982). Because the JUA policy does not attempt to escape liability in its entirety where other insurance is applicable, the JUA "other insurance" clause is deemed an "excess" clause rather than an "escape" clause.

**12.** Pacific is liable only to the extent of its policy limits. However, none of the relevant bookreader cases involve payments exceeding Pacific's policy limits.

Of course, if the case proceeds to judgment, the basis for recovery against Dr. Linn could render either Aetna's or Nationwide's policy, or both, inapplicable, in which case an insurer excess on the coverage implicated by the ground for recovery against the insured (*e.g.*, CAT Fund, Interstate, or Aetna) might be liable. The court has determined to await the outcome of *Harmon* to decide if any excess insurer has an indemnity obligation.

## IV. REIMBURSEMENT

The insurers seek reimbursement for money expended in the defense and settlement of various bookreader cases. These claims for reimbursement had been denied without prejudice until all underlying cases had been terminated. The court has now determined the obligations regarding the defense and indemnification of Dr. Linn in the underlying bookreader cases except for *Harmon*. The reimbursement petitions are ripe for determination except that reimbursement for money spent in regard to the *Harmon* case must await its termination.

Pacific, Aetna, JUA and Interstate have all filed petitions for reimbursement. Pacific seeks reimbursement from Aetna, or, in the alternative, Interstate, for funds expended in the defense and/or settlement of the *James, Bass, Smith, Lehman, Cochran* and *Silberlicht* cases.[13] Aetna claims reimbursement from Nationwide for money expended in defense and/or settlement of the *Lehman, Silberlicht, Cochran, Hudgens* and *Hunton* cases,[14] and from Pacific for settlement payments made in the *James* and *Bass* cases. JUA seeks reimbursement from Aetna and Nationwide for funds expended in defense of the *Hunton* case. Interstate seeks reimbursement from Aetna and Nationwide for funds advanced in defense of *Hunton.*

Reimbursement will be awarded in accordance with the duties to defend and indemnify. Since the duty to defend is independent of liability and any limitations thereon, *see, Liberty Mutual, supra* at 988; *Brunner, supra* at 499, each insurer owing Dr. Linn a defense is required to contribute to costs of defense in equal shares with any other insurer also obligated to defend Dr. Linn. *See, e.g., First Insurance Co. of Hawaii v. Continental Casualty Co.*, 466 F.2d 807, 811 (9th Cir. 1972).[15] Each carrier required to indemnify Dr. Linn for settlement costs must do so in the amount previously specified.[16] Therefore, each party's claim for reimbursement is granted to the extent the claim reflects payment in excess of the defense and indemnity obligations determined above. Any question as to the reasonableness of the amounts claimed (including, for example, Aetna's claim that certain defense sums were not expended on the *Hunton* case) is to be submitted to arbitra-

---

**13.** Pacific also seeks reimbursement for defense costs in the *Harmon* case, but any reimbursement claim relating to *Harmon* must await its termination.

**14.** Aetna also seeks reimbursement for funds advanced in defense and settlement of the *Kerr* case, but that case is not involved in this action.

**15.** It has not been determined under Pennsylvania law how defense costs are to be distributed between insurers. This distribution seems the most equitable in view of the unique facts involved herein, and the most likely result were the Pennsylvania courts to rule on this issue. *See, McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).

**16.** Each insurer is jointly and severally liable for the entire cost of a defense and/or liability (to the extent the court has imposed liability), regardless of the liability of other insurers. *Sandoz, supra* at 266–267. Pacific would ordinarily be entitled to recover its entire claim for reimbursement in excess of its own obligations from Aetna (and Aetna could thereafter recover its excess payments from Nationwide) and is not limited to seeking only half from Aetna and half from Nationwide. However, because this is a declaratory judgment action, and since all the relevant parties are concurrently before the court, the court will only award reimbursement from each carrier as described above, *i.e.*, each party must pay only its required percentage of defense and settlement costs.

tion in accordance with the agreement of the parties.[17]

## V. DECLARATORY JUDGMENT EXPENSES

██ The court may award attorneys' fees and costs in bringing an action to establish the duties to defend and indemnify where an insurer's refusal to defend an insured in an underlying action has been unreasonable and in bad faith. *Montgomery Ward & Co. v. Pacific Indemnity Co.*, 557 F.2d 51 (3d Cir.1977); *Kelmo Enterprises v. Commercial Union Ins. Co.*, 285 Pa.Super. 13, 426 A.2d 680 (1981). The court determined in its prior opinion, filed December 1, 1982, that the conduct of the insurers did not then warrant an award of attorneys' fees and costs because the complex and unusual factual and legal situation prevented clear determination of the duties to defend and indemnify to that time. But that opinion also clearly determined the various obligations to defend. Since then, only Nationwide has refused to contribute in any way to the defense of Dr. Linn in the bookreader cases. Such refusal in light of the court's opinion on Nationwide's duty to defend can only be characterized as unreasonable and lacking in the good faith required of an insurer with respect to its insured. Therefore, the court will award the other parties attorneys' fees and costs in maintaining this declaratory judgment action from the date of the court's prior opinion, December 1, 1982.

██ The court recognizes that part of the fees and costs incurred by the remaining carriers since the court's prior opinion were spent in briefing the duty to indemnify and would have been incurred in spite of Nationwide's obstinate behavior. But the court is not required to allocate fees and costs where allocation would be exceedingly difficult. *See generally, Hensley v.*

*Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Moreover, Nationwide's refusal to supply any defense at all to Dr. Linn made settlement of both the underlying cases and the instant declaratory judgment action more difficult and extended the time needed to dispose of the matter. The court awards attorneys' fees and costs without reduction for time spent on the indemnity issue. Any question of reasonableness of the fees and costs will be determined through arbitration in accordance with the agreement of the parties.

## VI. INTEREST

██ Those carriers entitled to reimbursement for defense and indemnity costs are also entitled to prejudgment interest on the reimbursed funds. In an ordinary suit for contract damages, prejudgment interest is limited to the six percent legal rate. *Peterson v. Crown Financial Corp.*, 661 F.2d 287, 292 (3d Cir.1981). Where a claim calls for a court's broader equitable powers, *e.g.*, claims involving unjust enrichment, the court may award prejudgment interest in an amount greater than six percent. *Id.* at 292–93. Although the actual duties to defend and indemnify are contractual in nature, *see, e.g., Gedeon v. State Farm Mutual Automobile Ins. Co.*, 261 F.Supp. 122, 123 (W.D.Pa.1966), *aff'd in part, rev'd in part*, 386 F.2d 600 (3d Cir. 1967), the right of contribution from others sharing a common burden is grounded in equity and does not arise from contract. *Massachusetts Bonding & Ins. Co. v. Car & General Ins. Co.*, 152 F.Supp. 477, 482 (E.D.Pa.1957); *Embrey v. Borough of West Mifflin*, 257 Pa.Super. 168, 390 A.2d 765 (1978). Therefore, the court is not limited to an award of prejudgment interest at the statutory rate but may in its

---

**17.** Pacific's claim for reimbursement from Interstate is premature. Pacific claims that since Interstate's coverage is "collapsible," *i.e.,* if the underlying insurance is not "collectible by the Insured," Interstate's coverage will "collapse" to become primary, Pacific should be entitled to judgment against Interstate directly for all defense and settlement payments made in excess of its obligations. pacific cannot yet show that the underlying insurance as to the Interstate policy is in fact not collectible. But Aetna is now being ordered to reimburse Pacific for defense and settlement costs. There is no justiciable issue at this time regarding Interstate's potential obligations to Pacific.

discretion increase or decrease the applicable interest rate. *See, Peterson, supra.*

Since 1982, the Clerk of this court has awarded interest on judgments at the prevailing three-month Treasury Bill rate, as provided by the Federal Courts Improvement Act of 1982. According to the Federal Reserve Bank figures during the pendency of this action, the average three-month Treasury Bill rate fluctuated between 8.63% and 14.08%. The court considers ten percent (10%) a fair average figure and awards prejudgment interest at that rate for all reimbursable funds from the date expended.[18]

## VII. FED.R.CIV.P. 54(b) CERTIFICATION

In this declaratory judgment action to determine duties of defense and indemnification with regard to certain claims against the insured, one of the underlying claims remains pending; the duty to indemnify therein cannot yet be determined. The court cannot render a final judgment so the Court of Appeals would still lack jurisdiction over an interlocutory appeal unless certified under Fed.R.Civ.P. 54(b).

This court previously denied certification of the duty to defend issues to prevent the necessity of duplicative and piecemeal review by the Court of Appeals and to determine the obligation to indemnify issues that were then ripe for decision. *See,* Memorandum and Order dated November 9, 1983. The trial court has now determined all the defense obligations and the indemnity obligations for all the underlying actions except *Harmon.* Because the indemnity obligation in *Harmon,* if terminated prior to preclusion of any claims now made, will follow the obligation in *Silberlicht,* the risk of duplicative and piecemeal review is no longer significant. It is unlikely the disposition of *Harmon* will implicate the excess policies, but if it does, the issue is severable from those finally disposed of by the trial court herein. There now being no just reason for delay, pursuant to Fed.R.Civ.P. 54(b) the court will expressly direct the entry of judgment on defense and indemnification as to all the bookreader cases except for *Harmon* to permit consideration by the Court of Appeals now.

## JUDGMENT

For the parties referred to herein,
see Appendix "A."

For the Complaints referred to herein,
see Appendix "B."

For the Insurance Policies referred to
herein, see Appendix "C."

AND NOW, this 25th day of June, 1984, upon consideration of the plaintiff's claim for declaratory relief, counterclaims, cross-claims and third-party claims, and for the reasons stated in the foregoing Memorandum, it is ORDERED that each party has the following obligations:

A. *Obligation to Defend:*

| | |
|---|---|
| *James* | - Pacific, Aetna, JUA |
| *Smith* | - Pacific, Aetna, JUA, Nationwide |
| *Lehman* | - Aetna, Nationwide |
| *Silberlicht* | - Aetna, Nationwide |
| *Cochran* | - Aetna, Nationwide |
| *Hudgens* | - Aetna, Nationwide |
| *Bass* | - Pacific, Aetna, JUA |
| *Harmon* | - Aetna, Nationwide |
| *Hunton* | - Aetna, Nationwide |

The above obligations and corresponding costs are to be shared equally.

B. *Obligation to Indemnify:*

| | |
|---|---|
| *James* | - Pacific, two-thirds of recovery; Aetna, one-third of recovery |
| *Smith* | - Pacific, one-half of recovery; Aetna, one-quarter of recovery; Nationwide, one-quarter of recovery |
| *Lehman* | - Aetna, one-half of recovery; Nationwide, one-half of recovery |
| *Silberlicht* | - Actna, one-half of recovery; Nationwide, one-half of recovery |
| *Cochran* | - Judgment for defendant |
| *Hudgens* | - Judgment for defendant |
| *Bass* | - Pacific, two-thirds of recovery; Aetna, one-third of recovery |

---

**18.** Interstate submitted an affidavit establishing a somewhat higher rate of return for its commercial paper and negotiable certificates of deposit from January 1, 1981 to September 30, 1983. The court finds such a rate less appropriate to these parties on these facts.

*Harmon* - Not ripe for decision
*Hunton* - Judgment for defendant

WHEREFORE,

1. On Pacific's claim against all defendants, Pacific is GRANTED declaratory relief as to the obligation to defend in the *Lehman, Silberlicht, Cochran, Hudgens, Harmon* and *Hunton* cases and DENIED declaratory relief as to the obligation to defend in the *James, Smith* and *Bass* cases, but it is adjudged that Aetna is also obligated to defend in *James, Bass* and *Smith.* Pacific is GRANTED declaratory relief as to the obligation to indemnify in the *Lehman* and *Silberlicht* cases and DENIED declaratory relief as to the obligation to indemnify in the *James, Smith* and *Bass* cases. Pacific is GRANTED declaratory relief as to the obligation to indemnify in the *Lehman* and *Silberlicht* cases and DENIED declaratory relief as to the obligation to indemnify in the *James, Smith* and *Bass* cases, but it is adjudged that Aetna is also obligated to indemnify in the *James, Smith* and *Bass* cases.

Pacific's motion for reimbursement from Aetna for funds expended in the defense and/or settlement of the *James, Bass, Smith, Lehman, Cochran* and *Silberlicht* cases is GRANTED to the extent that the funds requested exceed Pacific's defense and indemnity obligations therein. Aetna shall reimburse Pacific for funds expended by Pacific which should have been expended by Aetna. Nationwide shall reimburse Pacific for funds expended by Pacific in the defense and/or settlement of those cases which should have been expended by Nationwide. Pacific's alternative claim for reimbursement from Interstate is DENIED without prejudice to renewal if the underlying insurance is uncollectible.

2. On Linn, Moses and Linn Associates' cross-claim against Interstate, Linn, Moses and Linn Associates are DENIED declaratory relief and judgment is entered in favor of Interstate. On Linn, Moses and Linn Associates' third-party claim against JUA, Linn, Moses and Linn Associates' are GRANTED declaratory relief as to the obligation to defend in the *James, Smith* and *Bass* cases and DENIED declaratory relief as to the obligation to defend in the *Lehman, Silberlicht, Cochran, Hudgens, Harmon* and *Hunton* cases. Linn, Moses and Linn Associates are DENIED declaratory relief and judgment is entered in favor of JUA as to the obligation to indemnify. On Linn, Moses and Linn Associates' cross-claim against Aetna and third-party claim against Nationwide, Linn, Moses and Linn Associates are GRANTED declaratory relief.

3. On Aetna's counterclaim against Pacific and third-party claim against JUA, Aetna is DENIED declaratory relief as to the obligation to defend, but it is adjudged that Pacific and JUA are also obligated to defend the *James, Smith* and *Bass* cases. Aetna is DENIED declaratory relief as to the obligation to indemnify, but it is adjudged that Pacific is also obligated to indemnify in the *James, Bass* and *Smith* cases. On Aetna's cross-claim against Interstate, Aetna is DENIED declaratory relief and judgment is entered in favor of Interstate. On Aetna's third-party claim against Nationwide, Aetna is DENIED declaratory relief, but it adjudged that Nationwide is also obligated to defend in the *Lehman, Silberlicht, Cochran, Hudgens, Harmon* and *Hunton* cases, and indemnify in the *Smith, Lehman* and *Silberlicht* cases.

Aetna's motion for reimbursement from Nationwide for funds expended in defense and/or settlement of the *Lehman, Silberlicht, Cochran, Hudgens* and *Hunton* cases, and from Pacific for settlement payments made in the *James* and *Bass* cases is GRANTED to the extent that the funds requested exceed Aetna's defense and indemnity obligations therein.

4. On Interstate's cross-claim against Aetna and third-party claims against JUA and Nationwide, Interstate is GRANTED declaratory relief and judgment is entered in favor of Interstate. Interstate's motion for reimbursement from Aetna and Nationwide for funds expended in defense of the *Hunton* case is GRANTED; Aetna and Nationwide shall each reimburse Interstate

for one-half of the funds expended by Interstate therein.

5. On JUA's counterclaim against Aetna, JUA is GRANTED declaratory relief that Aetna is obligated to share the defense of the *James* and *Bass* cases with Pacific and JUA. JUA is GRANTED declaratory relief as to the obligation to indemnify and it is adjudged that JUA has no indemnity obligation in any of the underlying cases. On JUA's counterclaim against Linn, Moses and Linn Associates, JUA is GRANTED declaratory relief as to the obligation to indemnify and it is hereby adjudged that JUA has no indemnity obligation in any of the underlying cases. On JUA's counterclaim against Linn, Moses and Linn Associates, JUA is GRANTED declaratory relief as to the obligation to defend in the *Lehman, Silberlicht, Cochran, Hudgens, Harmon* and *Hunton* cases, and DENIED declaratory relief as to the obligation to defend the *James, Smith,* and *Bass* cases. JUA is GRANTED declaratory relief as to the obligation to indemnify and it is adjudged that JUA has no obligation to indemnify in any of the underlying cases. On JUA's counterclaim against Interstate, JUA is DENIED declaratory relief and judgment is entered in favor of Interstate.

JUA's motion for reimbursement from Aetna and Nationwide for funds expended in defense of the *Hunton* case is GRANTED; Aetna and Nationwide shall each reimburse Interstate for one-half of the funds expended by JUA therein.

6. Nationwide shall reimburse the other parties for attorneys' fees and costs incurred in maintaining this declaratory judgment action from December 1, 1982 to the date of this judgment.

7. In accordance with the parties' stipulation of procedure, any dispute as to the amount of fees, costs and expenses is referred to final and binding Defense Research Institute arbitration.

8. Prejudgment interest at a rate of ten percent (10%) from the date of expenditure is awarded on all reimbursed funds, but not on fees and costs incurred in maintaining this declaratory action.

9. All claims for indemnity and/or reimbursement in the *Harmon* case are DENIED without prejudice to later determination when ripe for decision under the Declaratory Judgment Act.

10. The court expressly determines that there is no just reason for delay and that this Judgment (except as to the *Harmon* case) is entered as final pursuant to Fed.R. Civ.P. 54(b).

## APPENDIX "A"

In this Judgment Order, the parties will be referred to as follows:

Pacific Indemnity Company ........................................ "Pacific"
Robert Linn, D.O. ................................................ "Dr. Linn"
Stephen D. Moses, D.O. .......................................... "Dr. Moses"
Robert Linn Medical Associates ........................... "Linn Associates"
David H. Smith, Individually and as Administrator of
 the Estate of Patricia Smith, Deceased .................... "Smith Estate"
Jack Silberlicht, Executor of the Estate of
 Judith Silberlicht, Deceased ........................... "Silberlicht Estate"
Aetna Insurance Company ........................................ "Aetna"
\* William K. Myrletus, Director, Pennsylvania
 Professional Liability Catastrophe Loss Fund ................ "CATFUND"
Interstate Fire & Casualty Company ........................... "Interstate"
Nationwide Mutual Fire Insurance Company ................... "Nationwide"
Pennsylvania Professional Liability Joint
 Underwriting Association ........................................ "JUA"
\*\* Chicago Insurance Company ................................... "Chicago"

---

\* The motion of William K. Myrletus, Director, Pennsylvania Professional Liability Catastrophe Loss Fund ("CATFUND") for summary judgment was granted with respect to its duty to defend Dr. Linn. CATFUND's obligation of indemnification was not determined.

\*\* The motion of Chicago Insurance Company for summary judgment was granted on July 24, 1981.

## APPENDIX "B"

Williard D. James, Administrator of the Estate of Marilyn Verna James v. Robert Linn, D.O., et al., Civil Action No. C77–873V (W.D.Wash., filed December 2, 1977) ................... "James"

David H. Smith, Individually and as Administrator for the Estate of Patricia Smith v. Robert Linn, D.O., et al., No. 78–11694 (Pa.Ct. Common Pleas, Montg. Co., filed July 12, 1978) .............................................. "Smith"

John H. Lehman, et al. v. Superior Health Vitamins & Health Foods, Inc., et al., No. NEC 24600 (Cal.Super.Ct. L.A. Co., filed July 17, 1978) ............................................... "Lehman"

Jack Silberlicht, Executor of the Estate of Judith Silberlicht v. Robert Linn, et al., No. 3214, Aug. Term, 1978 (Pa.Ct. Common Pleas, Phila. Co., filed August 22, 1978) ................. "Silberlicht"

John Calvin Cochran, et al. v. Superior Health Vitamins & Health Foods, Inc., et al., No. C259486 (Cal.Super.Ct., L.A. Co., filed October 25, 1978) .................................. "Cochran"

Anna Shaw Hudgens v. Twin Laboratories, et al., No. C259693 (Cal.Super.Ct. L.A. Co., filed October 26, 1978) .................... "Hudgens"

Linda Mae Bass v. Controlled Drugs, et al., No. C240163 (Cal. Super.Ct., L.A. Co., filed December 1, 1978) ......................... "Bass"

Lawrence J. Harmon, Administrator of the Estate of Charlene Harmon v. Wayne M. Kassel, et al., No. 79L5097 (Ill.Cir.Ct., Cook Co., Law Div., filed on or about March 12, 1979) ............. "Harmon"

Della Berry Hunton, Executrix of the Estate of Johnie Eugene Berry v. Deane L. Crow, M.D., et al., Civil No. C79–146B (D.Wyo., filed May 22, 1979) ..................................... "Hunton"

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Theresa Weiss and Bert William Steinberg, Executors of the Estate of Herbert Weiss, deceased and Theresa Weiss v. Robert Linn, D.O., No. _____ (N.Y.Sup.Ct.N.Y. filed April 13, 1978) ......................................... "Weiss I"

\* Theresa Weiss and Bert William Steinberg, Executors of the Estate of Herbert Weiss, deceased and Theresa Weiss v. Ambix Laboratories, et al., No. _____ (N.Y.Sup.Ct. N.Y.Cty., filed September 15, 1978) .............................. "Weiss II"

---

## APPENDIX "C"

The coverage provided by the various insurance companies is as follows:

I. *Professional liability policies—*

A. *Primary Coverage*

1. *Pacific Indemnity Company ("Pacific")*—# LOP 95117537—professional services rendered or which should have been rendered during policy period: May 31, 1975—May 31, 1977; limits of liability of $100,000 per occurrence and $300,000 per annual aggregate.

\* All claims as to the *Weiss* cases were withdrawn by stipulation of the parties at the time of trial.

2. *Pennsylvania Professional Liability Joint Underwriting Association ("JUA")*—# D0308201—professional services rendered or which should have been rendered from June 1, 1977 to the present; limits of liability of $100,000 per occurrence and $300,000 per annual aggregate.

B. *Excess Coverage*

* 3. *Pennsylvania Professional Liability Catastrophe Loss Fund ("CAT-FUND")*—a contingency fund to which Dr. Linn is required to contribute by statute and which in turn affords him excess professional liability limited to $1,000,000 for each occurrence and $3,000,000 per annual aggregate; effective date of statute was October 15, 1975.

** 4. *Chicago Insurance Company ("Chicago")*—Professional Comprehensive Personal Catastrophe Liability Policy No. 256–6578 with respect to any occurrence not covered by underlying policies for the policy period June 30, 1973—June 30, 1976; policy limits of $5,000,000.

5. *Interstate Fire & Casualty Insurance Company ("Interstate")*—Professional Comprehensive Personal Catastrophe Liability Policy No. 155–017143, with respect to any occurrence not covered by the underlying policies for the period June 30, 1976—June 30, 1977; policy limits of $1,000,000.

II. *General Liability Policies*

A. *Primary*

*** 1. *Pacific*—Office Premises Endorsement to professional liability policy # LOP 95117537 covering liability for personal injuries arising out of hazards connected with the ownership, maintenance or use of the physicians' office premises and all operations necessary or incidental thereto and having limits of $100,000 per person and $300,000 per accident; policy period: May 31, 1975—May 31, 1977.

2. *Aetna Insurance Company ("Aetna")*—Commercial Package Policies Nos. CPP385400 and 397474 covering occurrences which result in bodily injury and having limits of liability of $500,000 per occurrence and $500,000 per aggregate; policy period: January 1, 1976—January 1, 1981.

B. *Excess*

3. *Aetna*—Umbrella Liability Policies Nos. 759436, 760346, 760228 and 760285 covering ultimate net loss for damages owed because of personal injuries caused by an occurrence; and having limits of $2,000,000 per occurrence and $2,000,000 per aggregate; policy period: January 1, 1976—January 1, 1980.

III. *Personal Liability Policies*

A. *Primary*

1. *Nationwide Insurance Company ("Nationwide")*—Homeowner Policy No. 58MP 602–749 effective August 1, 1976—July 31, 1978; Bodily Injury and Property Damage: $100,000 each occurrence; coverage was originally issued to Dr. Linn and his wife on July 1, 1961 and remains effective to the date of this action.

B. *Excess*

† 2. *Chicago*—Chicago's policy has a $5,000,000 limit for personal liability; policy period: June 30, 1973—June 30, 1976.

3. *Interstate*—Interstate has a $1,000,000 limit for personal liability;

---

* The motion of William K. Myrletus, Director, Pennsylvania Professional Liability Catastrophe Loss Fund ("CATFUND") for summary judgment was granted with respect to its duty to defend Dr. Linn. CATFUND's obligation of indemnification was not determined.

** The motion of Chicago Insurance Company for summary judgment was granted on July 24, 1981.

*** The motions for summary judgment which were decided on July 24, 1981 did not relate to this coverage. Aetna amended its answer to assert a counterclaim against Pacific by reason of this coverage on November 20, 1981.

† The motion of Chicago Insurance Company for summary judgment was granted on July 24, 1981.

policy period: June 30, 1976—June 30, 1977.