**C. H. HEIST CARIBE CORPORATION,**

v.

**AMERICAN HOME ASSURANCE COMPANY, Appellant.**

**No. 80–2270.**

United States Court of Appeals, Third Circuit.

Argued Dec. 9, 1980.

Decided Feb. 10, 1981.

Edwin L. Scherlis, Frank, Margolis, Edelstein & Scherlis, Philadelphia, Pa., Mark L. Milligan (argued), Christiansted, St. Croix, V. I., for appellant.

Richard E. Daley (argued), Isherwood, Barnard & Diehm, Christiansted, St. Croix, V. I., for appellee.

Before SEITZ, Chief Judge, and GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

American Home Assurance Company (American) appeals from an order of the district court granting summary judgment for C. H. Heist Caribe Corporation (Heist),[1]

### I.

In November 1976, a Heist employee named Russell Crookham was injured while cleaning a chemical storage tank at Hess Oil Virgin Islands Corporation (Hess Oil). Crookham brought a personal injury action against Hess Oil, alleging that he suffered serious physical and mental injuries because he was exposed to highly toxic lead substances during the cleaning process. Hess Oil then filed a third-party complaint against Heist, contending that Heist was liable, under an October 7, 1976 indemnity agreement, for any injuries incurred by Heist employees while working at Hess Oil.

Heist notified American, its insurer, of the third-party action and requested that American defend the action and provide liability coverage. American refused to defend or provide coverage on two grounds: (1) Heist did not report the October 7 indemnity agreement to American as required by the contractual liability provisions of the insurance policy, and (2) paragraph (m) of the policy excluded from coverage injuries resulting from the nonaccidental discharge of toxic substances.

As a result of American's refusal to defend or provide coverage, Heist brought this declaratory judgment action against American for a determination of its rights under the policy. After discovery, Heist and American filed cross motions for summary judgment. The district court granted

---

1. American filed a notice of appeal from the order of the district court granting summary judgment before the court disposed of two motions by Heist requesting indemnification for attorneys' fees and costs. However, the district court has since disposed of these motions. Thus, even though the district court's order granting summary judgment may not have been a final order because of the pending motions, we may treat it as final in the absence of

prejudice to appellee Heist. *See Richerson v. Jones*, 551 F.2d 918 (3d Cir. 1977). Heist has not asserted that it was prejudiced, and we see no basis in the record for such a finding.

Although American filed a notice of appeal from the district court's decision on the attorneys' fees motions, this appeal has been dismissed. Thus, only the order of the district court granting summary judgment for Heist is challenged on appeal.

Heist's motion, which sought a declaration that the third-party action was "within the coverage" of Heist's insurance policy with American. The court held that the reporting provisions of the policy should be construed in favor of the insured because they are ambiguous. The court also found that paragraph (m) was inapplicable because it only excluded coverage for nonaccidental environmental pollution.

## II.

American argues that the reporting provisions of the policy are not ambiguous, and that they require Heist to notify American of all indemnity agreements within ninety days of entering into those agreements. Because Heist did not notify American of the October 7 indemnity agreement, American contends that it is not obligated to defend the third-party action or to provide liability coverage. American also maintains that the district court erred in granting summary judgment for Heist because unresolved issues of material fact remain as to the parties' intent in including the reporting requirement in the policy. Finally, American argues that paragraph (m) of the policy excludes from coverage the injuries sustained by Crookham, and that the district court's interpretation of paragraph (m) led it to decide incorrectly that American must not only defend the third-party action but also indemnify Heist against any judgment in that proceeding.

 In resolving these issues, this court is guided by the general principles of insurance law. *See Buntin v. Continental Insurance Co.*, 583 F.2d 1201, 1204 n.3 (3d Cir. 1978); V.I. Code Ann. tit. 1, § 4 (1967). An insurance policy must be read as a whole and construed according to the plain meaning of its terms. If those terms are reasonably susceptible of more than one interpretation, they are regarded as ambiguous. *See, e. g., Buntin*, 583 F.2d at 1207; *C. Raymond Davis & Sons, Inc. v. Liberty Mutual Insurance Co.*, 467 F.Supp. 17, 20 (E.D.Pa.1979). All ambiguities must be resolved against the insurer and in favor of coverage. *See, e. g., Buntin*, 583 F.2d at

1207; *Transport Indemnity Co. v. Home Indemnity Co.*, 535 F.2d 232, 235–36 (3d Cir. 1976). It is settled, however, that an insurer's obligation to defend an action against the insured is not necessarily coextensive with its obligation to indemnify the insured. *See, e. g., Moffat v. Metropolitan Casualty Insurance Co.*, 238 F.Supp. 165, 173 (M.D. Pa.1964); *Missionaries of the Company of Mary, Inc. v. Aetna Casualty & Surety Co.*, 155 Conn. 104, 230 A.2d 21, 24 (1967). Different elements of proof are required to establish a breach of each obligation.

### A. *The Reporting Requirement*

The printed provisions of Heist's insurance policy with American provide that American "will pay on behalf of the insured, all sums which the insured, by reason of contractual liability assumed by him under a contract designated in the schedule for this insurance, shall become legally obligated to pay as damages because of . . . bodily injury . . . ." The following schedule was included in the policy:

### CONTRACTUAL LIABILITY INSURANCE

#### (Designated Contracts Only)

#### Schedule

The insurance afforded for contractual liability is only with respect to such of the following Coverages as are indicated by a specific premium charge applicable thereto.

This schedule contains advance premium charges for bodily injury. In addition, the following typewritten provision was inserted in that portion of the schedule in which specific contracts were to be listed:

### BLANKET AUTOMATIC CONTRACTUAL
#### (90 DAYS REPORTING)

The plain meaning of the printed terms of the policy is that only those contracts specifically designated in the schedule are covered. It is not clear, however, what effect the typewritten provision has on

these terms. American contends that "BLANKET AUTOMATIC CONTRACTU- AL (90 DAYS REPORTING)" means that automatic coverage is provided only for those contracts reported to American within ninety days of their execution. However, as Heist notes, this provision is also reasonably susceptible of an interpretation that *any* contractual liability assumed by Heist is automatically covered by the policy. Under this interpretation, the ninety-day-reporting provision can be viewed as requiring only that all occurrences giving rise to liability be reported within ninety days, or that all claims based upon contractual liability be reported within ninety days.

The reasonableness of Heist's interpretation is strengthened by the fact that the typewritten provision was inserted in that portion of the schedule where specific contracts were to be listed. Thus, the term "BLANKET AUTOMATIC CONTRACTUAL" can be read as an indication that the parties did not intend that specific contracts had to be listed in the schedule. Moreover, Heist emphasizes that there was an insurance form available to American that clearly imposes reporting requirements as a precedent to coverage. The fact that American did not use this form is not conclusive as to whether it intended to subject Heist to reporting requirements. Nevertheless, it is of probative value in interpreting the policy because it demonstrates that "different and more explicit language could have easily been used to express clearly and unequivocally [the insurer's] intent." *Buntin*, 583 F.2d at 1206; *see Consolidation Coal Co. v. Liberty Mutual Insurance Co.*, 406 F.Supp. 1292, 1295 (W.D.Pa.1976) (provision is ambiguous if intelligent persons could differ as to precise meaning and if alternative language would have put meaning beyond reasonable question). Because the reporting provisions of the policy are reasonably susceptible of two different interpretations, we agree with the district court that Heist's policy with American is ambiguous. This ambiguity must be resolved against American. Moreover, typewritten provisions of an insurance policy control if they conflict with the policy's printed provisions. *See, e. g., Buntin*, 583 F.2d at 1206.

Alternatively, American contends that the district court should not have granted Heist's motion for summary judgment because issues of material fact remain. American apparently is arguing that when the district court found the insurance policy to be ambiguous it should have denied summary judgment and heard testimony on the intent of the parties with regard to the contractual liability schedule and the reporting provisions. It is true that many courts will not apply the rule of construction that ambiguities must be resolved against the insurer until they have attempted to ascertain the intent of the parties through extrinsic evidence. *See, e. g., Consolidation Coal Co.*, 406 F.Supp. at 1296; *International Brotherhood of Painters & Allied Trades v. Hartford Accident & Indemnity Co.*, 388 A.2d 36, 43 (D.C.1978). However, American did not present in the district court any affidavits or other supporting papers that raise any unresolved issues of material fact concerning the intent of the parties. *See* Fed.R.Civ.P. 56(e). As a result, the district court was correct in granting summary judgment on this issue by resolving the ambiguity in the reporting provisions against American. American cannot refuse to defend or to provide coverage on the ground that Heist did not comply with the reporting provisions of the policy.

### B. Paragraph (m)

Paragraph (m) of the policy excludes from coverage bodily injury resulting from the "discharge, dispersal, release or escape of . . . fumes, . . . toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any . . . body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental." The district court held that the "clear meaning of this clause is to exclude coverage for non-accidental environmental pollution." As a result, it found that this exclusion did not

apply to injuries suffered by a Heist employee while cleaning a tank containing toxic fumes and substances. American argues that this exclusion is not limited to environmental pollution, and that it applies to injuries caused by toxic fumes "whether one person is poisoned or one hundred people are poisoned." American also maintains that the district court was incorrect in holding that the policy "covers" the third-party action because this decision requires American to indemnify Heist even though subsequent developments may demonstrate that the exclusion in paragraph (m) applies.

■ In determining whether paragraph (m) excludes from coverage the injuries suffered by Crookham, it is important to separate American's duty to defend Heist in the third-party action from its duty to indemnify Heist. American must defend the third-party action if the allegations of the complaint "state on their face a claim against the insured to which the policy *potentially* applies." *C. Raymond Davis & Sons, Inc. v. Liberty Mutual Insurance Co.*, 467 F.Supp. 17, 19 (E.D.Pa.1979) (emphasis in original). In making this determination, the factual allegations of Crookham's complaint against Hess Oil are controlling. That complaint alleges that Crookham was injured while cleaning a tank containing highly toxic lead substances. The allegations do not indicate that there was a discharge or release of toxic fumes or chemicals "into or upon land, the atmosphere or any . . . body of water." In addition, even if such a discharge or release from the tank could be implied, there is no basis in the complaint for finding that it was non-accidental. Therefore, the allegations of Crookham's complaint "state on their face a claim against the insured to which the policy *potentially* applies," and American must defend the third-party action.

American also contends that the district court's order in effect requires it not only to defend the third-party action but also to indemnify Heist against any judgment in that case. It is not clear that the district court intended to hold that American must indemnify Heist. Nevertheless, by granting Heist's motion for summary judgment and stating that the policy "covers" the third-party action, the district court's order appears to have that effect. American's obligation to indemnify Heist, however, cannot be determined merely on the basis of whether the factual allegations of Crookham's complaint potentially state a claim against the insured. Actual indemnification depends upon the existence or nonexistence of facts not yet established. For example, during trial of Crookham's complaint it may develop that paragraph (m) or another exclusion applies to some or all of the injuries in question. Similarly, factual findings in that action may demonstrate that Crookham's injuries are not within the scope of the October 7 indemnity agreement. Thus, a decision on American's obligation to indemnify Heist is premature at this stage of the proceedings.[2]

### III.

The order of the district court granting summary judgment will be vacated without prejudice to the extent that it requires American to indemnify Heist against any judgment in the third-party action. The order of the district court will be affirmed in all other respects.

■

---

**2.** We need not decide whether the district court was correct when it held that paragraph (m) excludes coverage only for nonaccidental environmental pollution. Under either the district court's or American's interpretation of paragraph (m), American must defend the third-party action because Heist potentially could be held liable for damages covered by the policy. Similarly, regardless of which interpretation of paragraph (m) is correct, a decision on American's obligation to indemnify Heist is premature at this time.