Ralph R. RIEHL, Jr., Appellee,

v.

**TRAVELERS INSURANCE CO., Appellant.**

No. 84–3675.

United States Court of Appeals, Third Circuit.

Argued June 11, 1985.
Decided Aug. 12, 1985.

John R. Bozza (argued), Ralph R. Riehl, III, Riehl & Bozza, Erie, for appellee Ralph R. Riehl, Jr.

Barry R. Ostrager, Mary Kay Vyskocil, Seth A. Ribner, Simpson Thacher & Bartlett, New York City, Steven H. Wyckoff, William K. Herrington & Associates, Pittsburgh, Pa., Francis J. McCarthy (argued), James K. Killelea, David M. Cain, The Travelers Ins. Co., Hartford, Conn., for appellant The Travelers Ins. Co.

Henry John Kupperman, Stewart Dalzell, Timothy C. Russell, Drinker, Biddle & Reath, Philadelphia, Pa., for amicus curiae Lumbermens Mut. Cas. Co.

Before WEIS, GARTH and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

Ralph Riehl, Jr., sought a declaration that certain insurance policies issued by the Travelers Insurance Company covered the expenses of cleaning up a toxic waste dump site located on his property. The site has been found to be releasing toxic pollutants into neighboring surface and ground waters. The district court granted summary judgment in favor of Riehl, declaring Travelers to be obligated to pay the costs of clean-up of the site "attributable to the applicable coverage period." Because material issues of fact are in dispute, we reverse the order of the district court and remand for trial.

1. The three coverage periods in question are July, 1980 to January, 1981; January, 1981 to January, 1982; and January, 1982 to January, 1983. A fourth policy, effective for the period January, 1983 to January, 1984 was found by the district court to exclude pollution damage claims, a ruling which Riehl does not challenge.

2. The analogous insuring clause in each *umbrella* policy reads:
   The Travelers will indemnify the Insured for all sums in excess of the deductible amount which the Insured shall become legally obligated to pay as damages because of injury to which this policy applies.

## I.

### A.

Riehl bases his claims on Comprehensive General Liability and supplementary "umbrella" policies issued by Travelers for three periods.[1] Each primary policy obligated Travelers to

[p]lay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of

Coverage A—bodily injury or

Coverage B—property damage

to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage.

Appendix at 74.[2]

Each primary policy, like the umbrella policy, *see, supra* at note 2, defines "property damage" as:

"Property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

Appendix at 68. "Occurrence" in the primary policies is defined as:

"Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected*

Appendix at 99. Included among those injuries covered by the umbrella policy is property damage, defined as:

2. Property Damage—which means (a) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, and (b) the loss of use of tangible property which has not been physically injured or destroyed if such loss of use is caused by an occurrence during the policy period.

*Id.*

*nor intended from the standpoint of the Insured;*

Appendix at 67 (emphasis added).[3]

The policies also contain several relevant exclusions. First and foremost, pollution damage "expected or intended by the insured or [one for whom the insured] is liable" is excluded under both the primary and umbrella policies:

The insurance does not apply

. . . . .

(f) to bodily injury or property damage arising out of any emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant if such emission, discharge, seepage, release or escape *is either expected or intended from the standpoint of any insured or any person or organization for whose acts or omissions any insured is liable.*

Appendix at 74, 99 (emphasis added). Also excluded under both primary and umbrella policies is damage to "property owned ... by the Insured." Appendix at 74, 99.

## B.

Riehl inherited the property in question from his father in 1970. Upon acquisition of the property, he continued to lease the property to Albert Fuchs, ostensibly for use as a landfill and metal reclamation business. Appendix at 579. Fuchs had occupied the property as lessee since the 1940's. Sometime during Fuchs' tenancy, toxic wastes began to be dumped on the property, though it is not clear when the dumping began or who did the dumping.

In August of 1980, the Pennsylvania Department of Environmental Resources (DER) notified Fuchs that his use of the property as a slag dumpsite without a permit was illegal. Appendix at 503, 530–31. In June, 1981, the DER advised Riehl through his attorney that the site was suspected to be a hazardous waste dump. Appendix at 504, 508, 547, 581. The Environmental Protection Agency (EPA) and DER subsequently determined that soil, surface, and ground waters had all become contaminated with toxic wastes, due to the illegal dumping and burial of drums containing toxic chemicals. In August of 1983, Riehl received notice that the EPA would commence clean-up of the site, and that all expenses of clean-up would be assessed against Riehl as a "responsible party" under the comprehensive Environmental Response Compensation Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607(a).[4] As of yet, no legal proceedings have been instituted against Riehl by either DER or EPA.

Riehl notified Travelers of the ongoing investigation on October 5, 1982. Riehl incurred expenses in performing his own investigation of the extent of contamination of the site. In response to Riehl's inquiries, Travelers' claims department issued a statement of its position, dated January 11, 1983:

It is still our position that no claim has been presented, and certainly none which would meet the definition of property damage or bodily injury as it is outlined

---

3. The umbrella policy contains no similar requirement of any "occurrence," but does similarly exclude damage either "expected or intended from the standpoint of the insured. Appendix at A99. The umbrella policy does require for coverage that the loss "occurs during the policy period." See note 2, *supra.*

4. 42 U.S.C. § 9607(a) provides in relevant part: Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

. . . . .

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, ... shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistewnt with the national contingency plan; and

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.

in the policy. For this reason, we cannot be more specific as to how we will apply coverage to future claims, if and when they ever even materialize.

You did ask that we address ourselves to coverage issues that we might foresee. For the purpose of this discussion, we surmised that at some point the DER might demand that you take some remedial action to prevent further pollution of streams and water ways in the area. In this context, you asked for our position as to any such remedial obligation.

It is The Travelers position that there is no coverage for costs involved in an "abatement remedy." First of all, we exclude coverage for damage to property owned by the insured. Further, it is our position that costs in connection with remedial action to avoid the future and or further damage are not property damage within the intent of the policy. We will not provide coverage for clean up of the insured's property either for current damage, or to prevent future damage.

\* \* \* \* \* \*

With respect to property damage, we believe that the date of loss should be the date the polluting act occurred. Through the years, apparently from sometime in the 1950's at least as far back as October of 1956, there were repeated acts of pollution. If each one could be fixed in time, those dates would represent the dates of loss. Since they cannot be fixed, we can only say that each Carrier who insured you will have to be responsible for a portion of any claim that materializes. Their responsible portion will be in proportion to the period of time which they insured you.

Appendix at 587–89.

### C.

In granting summary judgment to Riehl, the district court reasoned that, since injury to third parties had occurred in that the waters of the Commonwealth were damaged, liability was triggered. The district court also found the exclusion for damage to "property owned by the insured" inapplicable, as Riehl does not own the ground and surface water. Travelers asserts on appeal that the case is not justiciable; or, if it is justiciable, that summary judgment in favor of Riehl was erroneous because material factual issues remain in dispute. According to Travelers, genuine disputes exist as to whether an "occurrence" or loss occurred within the policy periods, and as to whether Riehl "expected or intended" the damage.

### II.

In order for a case to be justiciable, the salient facts must be real, not hypothetical. Our review of justiciability is plenary. The problem of justiciability is especially troublesome in a declaratory judgment action, where the court may be asked to decide a case based on events that have not yet and may not occur. *See Camerlo v. Howard Johnson Co.*, 710 F.2d 987, 989 (3d Cir.1983). Where, however, the essential facts establishing a right to relief, including declaratory relief, have already occurred, the case is justiciable. *See Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

From the summary judgment record before us, it appears that all relevant events have already occurred, and the case thus appears to be justiciable. The dumping of the wastes and the leaching off the property of these chemicals have apparently already transpired. Travelers contends that "the court made none of the important factual determinations which are a necessary predicate to a coverage determination." Brief for appellants at 29. This objection, however, concerns the propriety of summary judgment in this case; it does not concern nor establish non-justiciability if the salient events *have* occurred.

The only events which have yet to occur are the expenditure of funds by Riehl for clean-up and the entry of judgment imposing liability on Riehl for the toxic waste damage. However, neither immediate liability for damages, nor a liquidation to the extent of an insurer's indemnifica-

tion obligation, is necessary in this Circuit to establish a justiciable controversy. In *ACandS v. Aetna Casualty & Surety Co.*, 666 F.2d 819 (3d Cir.1981), this court found justiciable the question of liability insurance coverage for exposure to asbestos even though not all of the carriers against whom declaratory relief was sought were as yet implicated by an actual suit against the insured.[5]

Since all relevant events appear from the record to have occurred, we hold that this case is ripe for adjudication.

### III.

Summary judgment is appropriate only where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, all reasonable inferences must be drawn in favor of the non-movant. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

■ Initially, we note that the burden of establishing a valid policy claim falls upon the insured. *Compagnie Des Bauxites de Guinee v. Insurance Company of North America*, 551 F.Supp. 1239, 1242–43 (W.D. Pa.1982), *aff'd*, 721 F.2d 109 (3d Cir.1983). Thus, it fell upon Riehl to establish, by affidavit, the existence of an "occurrence" or a loss during the policy period.

■ Exactly what event would, as a legal matter, trigger liability in a toxic wastes case may be subject to some controversy. The district court and the parties to this case have not addressed this legal issue; that is, whether the dumping of wastes is the "occurrence" upon which cov-

erage would be based; or whether the leaching of these wastes is the "occurrence;" or whether the discovery of the pollution is the "occurrence." We note that in the somewhat-parallel (though not precisely analogous) situation of asbestosis claims, the issue as to the particular event which triggers insurance coverage—exposure to asbestos, latency of the disease, or diagnosis—has been extensively litigated. See, e.g., *ACandS v. Aetna Casualty and Surety Co.*, 764 F.2d 968 (3d Cir.1985) (holding that under Pennsylvania law, all three events trigger liability); *Eagle Pitcher Industries, Inc. v. Liberty Mutual Insurance Co.*, 682 F.2d 12 (1st Cir.1982) (manifestation), *cert. denied*, 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983); *Porter v. American Optical Corp.*, 641 F.2d 1128 (5th Cir.) (exposure), *cert. denied* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). Additionally, this court has decided that where an injurious practice has continued for some time, liability under an "occurrence" policy is triggered by the date the injurious effects occurred (manifestation) rather than the date the practice commenced. *Appalachian Insurance Co. v. Liberty Mutual Insurance Co.*, 676 F.2d 56 (3d Cir.1982).

We do not decide this legal issue, because on this record we cannot determine whether, or when, any of these events giving rise to this action took place. The record does not establish when dumping *first* commenced, when leaching *first* occurred, or when pollution was *first* discovered. Under any legal theory, one of these events during the policy period is necessary to trigger liability insurance coverage. Yet, as noted, on this record, it cannot be determined when any of these events occurred.[6] For this reason, summary judg-

---

**5.** *C.H. Heist Caribe Corp. v. American Home Assurance*, 640 F.2d 479, 483 (3d Cir.1981), cited by Travelers, is not to the contrary. In *Heist*, an insured brought a declaratory judgment action against its insurer to seek a determination of its rights under the policy. After discovery, each party filed a motion for summary judgment. The *Heist* court concluded that although the insurer had an obligation to defend its insured

in a third-party action, the summary judgment record before it would not permit any determination of whether the insurer had any additional duty to indemnify its insured against any judgment in the third-party action. *Heist* thus does not purport to decide any issue of justiciability.

**6.** In his brief, Riehl refers to statements that some dumping took place during April, 1981.

ment for Riehl was inappropriate. Riehl has not established by the summary judgment record before us when any liability of Travelers may have been triggered and what portion of the toxic waste injury may be attributable to periods during which any or all of Travelers' policies were in effect.

Travelers also asserts that whether or not Riehl "expected or intended" the pollution damage is a disputed factual issue, since the policies do not cover injuries "expected or intended by the insured." By affidavit, Riehl asserts that he never learned that the site was used for toxic waste dumping until notified by the DER of its findings in 1981. Affidavit of Ralph R. Riehl, Jr. dated March 28, 1984. In order to support an inference that Riehl must have known of the toxic dumping, Travelers relies on Riehl's interrogatory response that he visited the site from three to ten times a year from 1950 to 1981.[7]

In the context of this case, the inference of Riehl's knowledge which Travelers seeks to draw from his visits to the dump site is sufficient to raise an issue of fact requiring resolution at trial.[8] We note that issues of knowledge and intent are particularly inappropriate for resolution by summary judgment, since such issues must often be resolved on the basis of inferences drawn from the conduct of the parties. *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981).

## IV.

We observe that at the time the district court judge considered the summary judgment motion, he was confronted with cross-motions for summary judgment, filed by Riehl on the one hand and Travelers on the other. Although the mere fact that cross-motions for summary judgment are filed cannot be taken to mean that no material facts are in dispute, a court faced with such motions might well proceed to the legal issues without making as detailed an examination of the factual questions as it might otherwise undertake. Given the procedural posture of this case and the complexity of the legal issues argued by the parties, the significance of the underlying and unresolved factual problems may very well have been obscured before the district court.[9] However, on the basis of the record developed before the district court, summary judgment should not have been granted.

Our independent review of the record discloses that the legal issues presented by the parties cannot be resolved until the disputed issues of facts have been decided at trial. Before liability can be assessed or denied, the following questions of fact, among others, must be answered: 1) when were the toxic substances brought onto the property; 2) who brought the toxic substances onto the property; 3) what was the extent of Riehl's knowledge, if any, of toxic waste dumping; 4) whether within the meaning of the policy terms, Riehl "expect-

Appendix at 496. He does not contend that all dumping took place during 1981. At the very most, Riehl may have established liability for the dumping during April, 1981 as an "occurrence." The district court judgment was not so limited, however.

Riehl also asserts that "it is undisputed that dumping occurred for the period 1971 through 1981," referring only to Travelers appellate brief. Brief for appellee at 18. These "undisputed facts" were not apparently before the district court.

**7.** Travelers also relies on an inference that Riehl was aware during 1980 of the DER notice of violation issued to Fuchs in August of 1980.

**8.** Because of our determination that summary judgment is inappropriate in any event, we do not decide the legal issue of whether a general

liability policy obligates an insurer to indemnify the insured for the costs of remediation. Riehl argues that Pennsylvania law appears to establish such an obligation. *See Leebov v. United States Fidelity and Guarantee Co.,* 401 Pa. 477, 165 A.2d 82 (1960); *Aronson Associates, Inc. v. Pennsylvania National Mutual Insurance Co.,* 14 D & C 3d 1 (C.P.1977).

**9.** Travelers withdrew its cross-motion for summary judgment by letter dated June 5, 1984. Travelers' brief before this court does not refer to the withdrawal of its cross-motion. Nor does Travelers' letter form any part of the record in this case. That the motion had been withdrawn was first confirmed at oral argument before us.

ed or intended" the pollution damage [10]; and 5) whether any third-party claims have been made against Riehl. Only after all the necessary factual questions have been answered will the district court be able to determine *inter alia:* 1) what event constitutes an "occurrence" for purposes of the policy; 2) which policies are implicated thereby; and 3) the extent, if any, of Travelers' liability.

We therefore will reverse the grant of summary judgment dated August 7, 1985, and remand the case to the district court for trial. Travelers' motion to supplement the record with the affidavit of Richard C. Bargon dated March 4, 1985, is granted.

---

**10.** Travelers also contends that its coverage is excluded as a matter of law by the policy's pollution exclusion clause, which excludes pollution damage "expected or intended from the standpoint of any insured or any person or organization for whose acts or omissions any insured is liable." Riehl's personal expectation or intention is a matter for trial.

Because we remand the case for trial, we do not reach Travelers' claims that the district court abused its discretion by refusing to allow Travelers to amend its answer and by refusing to allow additional discovery prior to summary judgment. The district court is free to consider any such renewed application, if one is made.