COVINGTON TOWNSHIP, Plaintiff,

v.

PACIFIC EMPLOYERS INSURANCE COMPANY, Defendant.

Civ. No. 85–0528.

United States District Court,
M.D. Pennsylvania.

Feb. 7, 1986.

Edward S. Neyhart, Dunn & Byrne, Scranton, Pa., for plaintiff.

Joseph A. Murphy, Tellie, Durkin, Weinberger, Murphy & Piazza, P.C., Scranton, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiff, Covington Township, commenced this declaratory judgment action on April 19, 1985, against Defendant, Pacific Employers Insurance Co., seeking to compel defendant to provide a legal defense for plaintiff in accordance with an insurance contract between the parties. Essentially, plaintiff seeks a declaratory judgment that defendant provide legal defense for law suits against plaintiff "arising out of the causes of actions for the presence of giardia cysts in the Elmhurst and Springbrook Reservoirs." *See* Document 1 of the Record. Additionally, plaintiff requests costs and expenses incurred for defense of eight (8) lawsuits already commenced, as well as interest and attorney's fees. Plaintiff filed a Motion for Summary Judgment and supporting documents on August 2, 1985. *See* Document 9 of the Record. Plaintiff filed a Brief in Support of Motion

for Summary Judgment on August 12, 1985. Defendant filed an opposition brief on October 11, 1985 and plaintiff replied on November 1, 1985. The matter is now ripe for disposition. For the reasons set forth below, plaintiff's Motion for Summary Judgment will be granted; the request for reimbursement and interest will be held in abeyance pending receipt of proper documentation and the request for attorney's fees will be denied.

### FACTUAL BACKGROUND

Defendant entered into a Professional Liability Insurance Policy contract with plaintiff, coverage commencing on April 29, 1982. *See* Brief in Support of Motion for Summary Judgment, Document 10 of the Record and Memorandum on Behalf of Pacific Employers Insurance Company, Document 25 of the Record. The insurance contract, PEL 00 02 03, was to remain in effect until April 29, 1985. *See* Document 25 of the Record—Exhibit A. In essence, the contract provides:

I. INSURING AGREEMENT AND CLAIMS MADE CLAUSE

TO PAY ON BEHALF OF THE INSURED ALL SUMS WHICH THE INSURED SHALL BECOME LEGALLY OBLIGATED TO PAY AS "DAMAGES" AS A RESULT OF CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD BY REASON OF ANY ACT, ERROR, OR OMISSION IN SERVIC-

ES RENDERED IN THE DISCHARGE OF PUBLIC ENTITY DUTIES.

*Id.* at 1. The term insured includes the Public Entity itself [1] and defendant has the duty to defend any claim against the insured to which the insurance applies.[2] *Id.*

Plaintiff maintains that defendant is bound to provide a defense for eight (8) suits filed against plaintiff as the result of the recent giardia cyst contamination of drinking water. The eight (8) complaints filed against plaintiff allege, *inter alia*, that plaintiff negligently caused the contamination of the Springbrook reservoir. *See* Document 9 of the Record—Exhibits B to I. Basically, the eight (8) suits aver that plaintiff failed to provide adequate sewage treatment, granted sewage permits which permitted inadequate sewage treatment and failed to properly monitor and warn of the contamination of the drinking water supply. The "Insuring Agreement and Claims Made Clause" is broad in scope and, consequently, defendant relies on policy exclusions in denying its duty to defend.

Defendant contends that the insurance contract excludes coverage for the type of damages sought in the complaints filed against plaintiff. The policy, in pertinent part, provides:

This policy does not apply to any claim made against the Insured

3. for any damages, direct or consequential, arising from bodily injury, sickness, disease or death of person, or

(2) Airport;
(3) Utilities;
(4) Hospitals; or other Health Care Operations;
(5) Housing Authorities;
(6) Transit Authorities;
(d) the heirs, executors, administrators, assigns and legal representatives of each Insured above in the event of death, incapacity or bankruptcy.

1. In the definition section of the policy, the word "Insured" is defined as:
   (a) the Public Entity;
   (b) all persons who were, now are or shall be lawfully elected or lawfully appointed officials, members or employees of the Public Entity;
   (c) all persons who were, now are or shall be lawfully elected or lawfully appointed officials, members or employees of commissions, boards or other units operated by or under the direction of the Public Entity. Note that unless specifically endorsed on to this policy, this definition of "Insured" shall not include any of the following commissions, boards or units or any of their officials, members or employees:
   (1) School;

2. Defendant emphasizes the difference between a general liability policy and a professional liability policy. While these types of policies are distinguishable, the fact remains that the policy in question covers "any act, error, or omission in services rendered in the discharge of public entity duties." *See supra,* at 795.

for damage to or destruction of any tangible property including loss of use thereof.

*See* Document 25 of the Record—Exhibit A at 3. Furthermore, defendant maintains that the manner in which plaintiff allegedly caused the injury falls outside the ambit of the insurance contract. In this regard, the policy states:

This policy does not apply to any claim made against the Insured

7. for any damages arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

*Id.*

Defendant avers that plaintiff also carried general liability insurance with Pennsylvania National Mutual Casualty Insurance Company ("Pennsylvania National"). *See* Document 25 of the Record at 3. Plaintiff admits that Pennsylvania National has supplied counsel to represent plaintiff in the eight (8) lawsuits commenced. Plaintiff, however, maintains that Pennsylvania National "is not properly engaged in the defense of Covington Township."[3] Document 27 of the Record at 17. Furthermore, plaintiff asserts that Pennsylvania National voluntarily assumed defense of these lawsuits while reserving its right to disclaim the defense at any time. Whatever the reason, the fact remains that Pennsylvania National is providing a defense for plaintiff in the eight (8) lawsuits already commenced. Defendant's policy provides:

1. OTHER INSURANCE

Subject to the limitation of coverage as set forth in the policy section entitled THE COVERAGE 1 for prior insurance, this insurance shall be in excess of the amount of the applicable deductible of this policy and any other valid and collectible insurance available to the Insured, whether such other insurance is stated to be primary, pro-rata, contributory, excess, contingent or otherwise, unless such other policy is written only as a specific excess insurance over the limits of liability provided in this policy.

*See* Document 25 of the Record—Exhibit A at 3–4. The issue is whether defendant has the duty to defend plaintiff in the eight (8) lawsuits already filed and in any other lawsuit arising out of the causes of action for the presence of giardia cysts in the Elmhurst and Springbrook Reservoirs.

## DISCUSSION

The first issue is the propriety of granting a Motion for Summary Judgment in a declaratory judgment suit seeking to enforce an insurer's duty to defend its insured. Summary judgment is appropriate only when it is demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c); *see Riehl v. Travelers Insurance Co.,* 772 F.2d 19 (3d Cir.1985). "In making this determination, all reasonable inferences must be drawn in favor of the non-movant." *Riehl v. Travelers Insurance Co., supra,* at 23. The sole issue in this action is defendant's duty to defend plaintiff. As plaintiff points out, the issue in *Riehl* involved the duty to indemnify and, therefore, is distinguishable.

In *C.H. Heist Caribe Corp. v. American Home Assurance Co.,* 640 F.2d 479 (3d Cir.1981), plaintiff brought a declaratory judgment action against defendant when defendant refused to defend or provide coverage. The district court, after discovery, granted plaintiff's Motion for Summary Judgment. Our Court of Appeals held, "it is settled, however, that an insurer's obligation to defend an action against the insured is not necessarily coextensive with its obligation to indemnify the insured."

---

**3.** Apparently, Pennsylvania National has retained one (1) counsel to represent four (4) municipalities. Plaintiff asserts that this presents an improper conflict.

*Id.* at 481. Accordingly, different elements of proof are required to establish each obligation. *Id.* The court must determine whether there are material issues of fact in dispute concerning the duty to defend issue only. Defendant's obligation to indemnify plaintiff, if any, would depend on the existence or nonexistence of facts not yet established. *Id.* at 483. This does not preclude granting or denying summary judgment on the issue of defendant's duty to defend. *See also Riehl v. Travelers Insurance Co., supra* (in *Heist,* the court concluded that although the insurer had an obligation to defend its insured, the record before the court would not permit any determination on whether the insurer had the additional duty to indemnify its insured against a judgment in a third-party action).

"Under Pennsylvania law, ... the task of interpreting a contract is generally performed by a court.... The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument." *ACANDS, Inc. v. Aetna Casualty and Surety Co.,* 764 F.2d 968, 971 (3d Cir.1985) (citation omitted). The general rule is that insurance policies must be strictly construed against insurers. *Id.* at 973. This rule of strict construction applies even when the insured is a commercial entity. *See Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983). Furthermore, while the burden of establishing a valid policy *claim* falls upon the insured, *see Riehl v. Travelers Insurance Co., supra,* the insurer must defend the third-party action if the allegations of the complaint "state on their face a claim against the insured to which the policy *potentially* applies." *C.H. Heist Caribe Corp. v. American Home Assurance Co., supra,* at 483 (emphasis in original) (citation omitted). *See also Great Lakes Container Corp. v. National Union Fire Insurance Co.,* 727 F.2d 30 (1st Cir.1984) (insurer has the burden of proving noncoverage). This demonstrates why it is important to separate the duty to defend the insured in a third-party action from the insurer's duty to indemnify the insured. *Id.*

In determining whether the "policy potentially applies", the factual allegations of the third-party complaints are controlling. *Id. See also Pacific Indemnity Co. v. Linn,* 766 F.2d 754 (3d Cir.1985) (obligation to defend is determined *solely* by the allegations of the complaint in the action) (emphasis added). Thus, the court must examine the third-party complaints and determine if the insurance policy in question "potentially" could apply so as to trigger defendant's obligation to defend plaintiff in the actions. "When a term in the policy is ambiguous, ... and the intention of the parties cannot be discerned from the face of the policy, the court ... *MAY* look to extrinsic evidence of the purpose of the insurance, its subject matter, the situation of the parties, and the circumstances surrounding the making of the contract." *Pacific Indemnity Co. v. Linn, supra,* at 761 (emphasis added). This does not preclude a court from granting summary judgment in the appropriate circumstances. In similar circumstances, our Court of Appeals found that a district court was correct in granting summary judgment on an issue by resolving ambiguities against the insurer without taking further evidence on the intent of the parties. *C.H. Heist Caribe Corp. v. American Home Assurance Co., supra,* at 482. The court affirmed the district court's finding even though the insurer argued that "when the district court found the insurance policy to be ambiguous it should have denied summary judgment and heard testimony on the intent of the parties...." *Id.* Certainly, when material facts are not in dispute, summary judgment on the issue may be granted.

Ambiguities in the policy are to be strictly construed against the insurer, but "the language of a policy may not be tortured ... to create ambiguities." *Pacific Indemnity Co. v. Linn, supra,* at 761. Moreover, "exclusions from coverage contained in an insurance policy will be effective against an insured if they are clearly worded and conspicuously displayed, irrespective of whether the insured read the limitations or un-

derstood their import." *Id.* (citation omitted). While the exclusions in this case are conspicuously displayed, the court finds that the wording of the exclusions does not negate defendant's duty to defend its insured.

The court starts with the proposition that it should read the policy exclusions so as to avoid ambiguities, if the plain language permits. *See Treasure Craft Jewelers, Inc. v. Jefferson Insurance Co.,* 583 F.2d 650 (3d Cir.1978) (citation omitted). To reiterate, if the exclusions are found to be ambiguous, then the wording would be construed against defendant and defendant would have the burden of showing that the exclusions preclude coverage. *See Pacific Indemnity Co. v. Linn, supra,* at 765–66.

■ Plaintiff concedes that defendant need not provide a defense for suits alleging bodily injury as a result of contracting giardiasis. As plaintiff states, "the Plaintiff in the case at bar is not presently contesting the exclusion for bodily injury as it applies to Claimants who suffer from giardiasis." Document 10 of the Record at 12. The exclusion in question provides that the policy does not apply to a claim "for any damages, direct or consequential, arising from bodily injury, sickness, disease or death of person...." Clearly, four (4) of the eight (8) pending lawsuits, *see* Document 9 of the Record—Exhibits B, C, D and I, seek recovery for more than bodily injury, etc. For example, Civil No. 84–1519 (Middle District of Pennsylvania) seeks recovery for, *inter alia,* "economic harm in the form of reduced property values, lost businesses, reduced earning, evacuation costs, etc." *See* Document 9 of the Record—Exhibit B at ¶ 65; Exhibit C at ¶ 33; Exhibit D at ¶ 12 and Exhibit I at ¶ 37. The other four (4) suits appear to seek recovery for damages arising from bodily injury. *See* Document 9 of the Record—Exhibit E at ¶ 19, Exhibit F at ¶ 19, Exhibit G at ¶ 19 and Exhibit H at ¶ 19. In each, however, the complainants seek "other consequential, incidental, general and special damages...." *Id.*—Exhibit E at ¶ 31(g); Exhibit F at ¶ 31(g); Exhibit G at ¶ 31(g) and Exhibit H at ¶ 31(g). If an insurer must defend any claims against an insured in a third-party complaint, it must defend all of them. *Baldt Inc. v. American Universal Insurance Co.,* 599 F.Supp. 955 (E.D.Pa.1985). If some of the relief sought in the third-party complaints falls within the terms of coverage, the insurer is obliged to defend the entire claim even if other claims for relief are excluded from coverage. *See C. Raymond Davis & Sons, Inc. v. Liberty Mutual Insurance Co.,* 467 F.Supp. 17 (E.D.Pa.1979). Furthermore, "the duty to defend remains with the insurer until the insurer can confine the claim to a recovery that is not within the scope of the policy." *Pacific Indemnity Co. v. Linn, supra,* at 760. Thus, the "bodily injury" exclusion does not negate defendant's duty to defend plaintiff in the eight (8) lawsuits already commenced. This comports with the general policy of providing coverage when the duty to defend depends on an interpretation of policy exclusions. As the Pennsylvania courts state, "most importantly, in close or doubtful cases, we should find coverage for the insured, and if we err in interpreting a policy provision, we should err in favor of the insured." *Techalloy Co., Inc. v. Reliance Insurance Co.,* 338 Pa.Super. 1, 7, 487 A.2d 820 (1984) *citing Motley v. State Farm Mutual Automobile Insurance Co., Inc.,* 502 Pa. 335, 466 A.2d 609 (1983).

■ Defendant also asserts that the policy excludes coverage for damages resulting from the diminution of real estate, property values, lost profits, etc. The third exclusion [4] provides that the policy does not apply to a claim "for damage to or destruction of any tangible property including loss of use thereof." Plaintiff avers that claims for diminution of real estate, lost profits, etc., are not excluded from coverage by reason of this third exclusion so as to negate defendant's duty to defend. The court agrees with plaintiff.

---

4. This exclusion, set out in full in this Memorandum, is numbered three (3) in the policy documents. *See supra,* at 795–96. The court refers to it as the third exclusion for purposes of clarity.

In four (4) third-party suits, plaintiff is being sued for, *inter alia,* lost profits, enjoyment of property, etc. A literal reading of the third exclusion indicates that this type of damage is not excluded from policy coverage. For example, lost business or decreases in property values are not necessarily the result of damage to or the loss of use of tangible property. As plaintiff maintains, these types of damages are recoverable without actual damage to or destruction of tangible property. *See e.g., Malley-Duff & Associates, Inc. v. Crown Life Insurance Co.,* 734 F.2d 133 (3d Cir. 1984), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 564, 83 L.Ed.2d 505 (1984) (loss of business damages recoverable for Anti-Trust and interference with contract claims). Certainly, lost profits or decreases in property value *can* result from damage to tangible property. It is not necessary, however, for there to be damage to tangible property in order to recover lost profits, etc. For example, a business enterprise may allege that the contaminated drinking water caused potential customers to avoid patronizing that business for fear of contracting giardiasis. In such a case, a loss of profit occurs without damage to or destruction of tangible property. Giving effect to the plain language of the third exclusion demonstrates that defendant cannot deny its duty to defend based on this exclusion. This holding is reinforced by the law in Pennsylvania that in close or doubtful cases a court should find coverage for the insured. *Techalloy Co. v. Reliance Insurance Co., supra.*

Defendant's contention is that as a professional liability policy, the policy in question is not a substitute for liability coverage. *See* Document 25 of the Record at 13. Defendant does not, however, discuss the distinction between damage to tangible property and lost profits, etc. *Cf. American Motorists Insurance Co. v. Trane Co.,* 718 F.2d 842 (7th Cir.1983) (duty to defend arose only if third-party complaint alleged property damage; sufficient if third-party complaint claimed the loss of use of tangible property). Therefore, defendant cannot disclaim its duty to defend based on this third exclusion.

▮ Defendant avers that the cause of the alleged injuries is specifically outside the ambit of the insurance contract.[5] Plaintiff asserts that the third-party suits allege, *inter alia,* that defendant had a duty to monitor the water supply and wrongfully issued sewage permits. Plaintiff contends that it did not release sewage into the water. Thus, plaintiff's position is that the seventh exclusion does not apply because plaintiff's liability, if any, is not based on its discharge of any waste material. Again, the court agrees with plaintiff.

The seventh exclusion states that the policy does not apply to any claim for damages "arising out of the discharge, dispersal, release or escape of ... waste materials or other irritants, contaminants or pollutants into or upon ... any watercourse or body of water." Assuming *arguendo* that the contamination of the water supply was not sudden or accidental, *see* Document 25 of the Record at 16–29, the theories of liability contained in the eight (8) lawsuits are not predicated solely on plaintiff's discharge, etc. of waste material into the water supply.

While damages resulting from a failure to monitor, etc., arguably still could be said to arise from a discharge of waste material, the seventh exclusion apparently applies only when a named insured discharges, etc., waste material. At best, the seventh exclusion is ambiguous. The term "arising out of" is not defined in the policy and the intent of the parties as to the meaning of this term has not been placed in dispute by the supporting documentation.

Insurance clauses are regarded as ambiguous if they are "reasonably susceptible of more than one interpretation." *Pacific Indemnity Co. v. Linn, supra,* at 763 *citing C.H. Heist Caribe Corp. v. American*

---

**5.** Defendant relies on the exclusion numbered seven (7) in the policy. This exclusion is set out in full in this Memorandum. *See supra,* at 795–

96. For purposes of clarity, this exclusion will be referred to as the seventh exclusion.

*Home Assurance Co., supra.* Again, ambiguities in an insurance policy are to be strictly construed against the insurer. *Id.* Concededly, the discharge of waste material into the water supply is the apparent immediate cause of the injuries alleged in the third-party complaints. The damages sought from plaintiff, however, are based on plaintiff's acts or omissions in discharging its public entity duties, *i.e.*, monitoring the water supply and issuing sewage permits. While both readings of the seventh exclusion may be plausible, any ambiguity must be resolved in favor of plaintiff. Accordingly, considering the allegations of the eight (8) third-party complaints, the court finds that the seventh exclusion does not relieve defendant of its duty to defend claims based on the discharge, etc., of waste material by those other than the named insured.

In *Techalloy Co. v. Reliance Insurance Co., supra,* the issue was whether the discharge by the insured was sudden and accidental. The third-party complaint was based on the insured's dumping and storing of a dangerous chemical. *See also Great Lakes Container Corp. v. National Union Fire Insurance Co., supra* (similar exclusion; reading the insurance policy together with the third-party complaint demonstrated no ambiguity and the exclusion applied). This fact is absent in the present dispute. At most, the improper discharge or storage of sewage is but one of the theories on which the insured's liability is based. Certainly, other theories, *i.e.*, failure to monitor or wrongfully issuing permits, are not contained in the seventh exclusion. Again, it is established that if an insurer must defend any claims against an insured in the third-party complaint, it must defend all of them. *Baldt Inc. v. American Universal Insurance Co., supra.* "The insurer is obliged to defend the entire claim if some of the allegations in the complaint fall within the terms of coverage and others do not." *C. Raymond Davis & Sons, Inc. v. Liberty Mutual Insurance Co., supra,* at 19 *citing Cadwallader v. New Amsterdam Casualty Co.,* 396 Pa. 582, 152 A.2d 484 (1959). This expansive view can be attributed to the fact that the duty to defend is broader than the duty to indemnify. *See Techalloy Co. v. Reliance Insurance Co., supra; Pacific Indemnity Co. v. Linn, supra.*

In this case, defendant admits that the policy obligates it to "pay on behalf of Covington for damages 'by reason of any act, error or omission in services rendered in discharge of public entity duties.' " Document 25 of the Record at 1. Certainly, the allegations in the third-party complaints may potentially come within this coverage. To the extent defendant argues that there are insufficient facts in the record to invoke the duty to defend, the rule is "if coverage depends upon the existence or nonexistence of facts outside of the complaint that have yet to be determined, the insurer must provide a defense until such time as those facts are determined, and the claim is narrowed to one patently outside of coverage." *C. Raymond Davis & Sons, Inc. v. Liberty Mutual Insurance Co., supra,* at 19. Moreover, the duty to defend is determined solely by the allegations in the third-party complaints. *See Pacific Indemnity Co. v. Linn, supra; C.H. Heist Caribe Corp. v. American Home Assurance Co., supra.* While many courts will not apply the rule of construction that ambiguities must be resolved against the insurer until they have attempted to ascertain the intent of the parties through extrinsic evidence, *see C.H. Heist Caribe Corp. v. American Home Assurance Co., supra,* in this case, as in *Heist,* defendant does not present any affidavits or other supporting papers raising issues of material fact concerning the parties' intent. *Id.* at 482. In any event, defendant cannot deny its duty to defend plaintiff on the basis of these two (2) exclusions and summary judgment is appropriate.

■ Finally, defendant apparently maintains that it has no duty to defend plaintiff because defendant's role is that of an excess insurer. This fact alone, however, does not eliminate defendant's duty to defend plaintiff in the third-party suits. The court stresses that the issues of indemnifi-

cation and proration of expenses and/or liabilities between insurers are not before the court. The only issue presented here is the duty of an insurer to defend its insured.

In *Pacific Indemnity Co. v. Linn,* 590 F.Supp. 643 (E.D.Pa.1984), *aff'd,* 766 F.2d 754 (3d Cir.1985), the district court recognized that other insurance clauses apply "not to the duty to defend but only to the duty to indemnify since, in general, an 'other insurance' clause is invoked only when the insured has made some payment in discharge of liability." *Id.* at 651 n. 10. "The duty to defend is unaffected by an 'other insurance' clause because, unless stated otherwise, that obligation is independent of liability and any limitations thereon." *Id.* (citations omitted). A perusal of the insurance contract in this case reveals no clause relieving defendant of its duty to defend if another insurance policy appears to provide primary coverage. Accordingly, the court finds that defendant is required to defend plaintiff in the eight (8) actions commenced and in other litigation involving the giardiasis problem to which the policy applies. Of course, there may be a suit, *i.e.,* alleging bodily injury only, to which defendant's policy will not apply. This court cannot, however, prospectively decide which third-party lawsuits defendant will be compelled to defend on plaintiff's behalf. The parties must be guided by this Memorandum and Order in determining their future course of conduct. The court will not at this time order defendant to provide a defense in *any* lawsuit arising out of the presence of giardia cysts in the Elmhurst and Springbrook Reservoirs.

In passing, the court notes that the district court in *Linn* recognized that "it has not been determined under Pennsylvania law how defense costs are to be distributed between insurers." *Pacific Indemnity Co. v. Linn,* 590 F.Supp. at 654 n. 15. Generally, each insurer deemed owing a defense to the insured is required to contribute to

costs of defense in equal shares. *Id.* at 654. Our Court of Appeals, in its own opinion, cited this holding with approval. *Pacific Indemnity Co. v. Linn,* 766 F.2d at 768. This issue must be determined in the appropriate action.

Plaintiff has not briefed the issue of attorney's fees, reimbursement of costs actually expended or interest. The court recognizes that Pennsylvania National has been defending plaintiff to date in the aforementioned lawsuits. There is no indication in the record that plaintiff actually expended funds in its own defense thus far. The issue of distributing costs of defense between defendant and Pennsylvania National is not before the court.

Plaintiff's failure to brief these issues and failure to document expenses actually incurred by plaintiff, can be deemed a withdrawal of these requests. *See* Local Rule 401.5. The court, however, will hold the requests for reimbursement of expenses and interest on this amount in abeyance pending receipt of proper documentation and supporting brief from plaintiff. Certainly, plaintiff cannot expect to be reimbursed for funds which Pennsylvania National expended in defense of plaintiff. Likewise, it would appear that interest may be payable to Pennsylvania National in the appropriate action.[6] Thus, plaintiff will be afforded ten (10) days to establish that it is entitled to reimbursement with interest. A failure to submit this documentation will result in the conclusion that the requests are withdrawn.

■ Plaintiff's request for costs and attorney's fees incurred in bringing this action will be denied. "A court may award attorney's fees and costs incurred in bringing an action to establish the duties to defend and indemnify where the insurer's refusal to defend is unreasonable and in bad faith." *Pacific Indemnity Co. v. Linn,* 766 F.2d at 769. Defendant's refus-

---

6. "Carriers entitled to re-imbursement for defense ... costs are also entitled to prejudgment interest on the reimbursed funds." *Pacific Indemnity Co. v. Linn,* 590 F.Supp. at 655. If

plaintiff can establish that its own funds were expended, it may be entitled to the six (6) percent legal rate because the duty to defend is contractual in nature. *Id.*

al to defend up to this point was neither unreasonable or in bad faith. *See Baker Industries, Inc. v. Cerberus Limited,* 764 F.2d 204 (3d Cir.1985) (assessing attorney's fees is a matter for the district court's discretion).

An appropriate Order will enter.

### ORDER

In accordance with the reasoning set forth in the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

(1) Plaintiff's Motion for Summary Judgment is granted insofar as it relates to defendant's duty to defend plaintiff in the eight (8) lawsuits already commenced.

(2) Defendant must provide a legal defense for plaintiff in the eight (8) lawsuits referred to in the accompanying Memorandum.

(3) Plaintiff's request for reimbursement of money expended in defense of the aforementioned lawsuits and for interest on the expenses paid to date is held in abeyance.

(4) Plaintiff is granted ten (10) days to file documentation and supporting brief in support of its request for reimbursement and interest.

(5) Plaintiff's request for attorney's fees is denied.